## STATE EX REL. MARTIN v. MOORE.

1. CERTIORARI—APPEAL.—Where the right of appeal is provided from an inferior jurisdiction that must be pursued, and *certiorari* will not be allowed.

2. ELECTIONS—NEW COUNTIES—COUNTY BOARD OF CANVASSERS—STATE BOARD OF CANVASSERS.—AN APPEAL lies from the county board of canvassers to the State board of canvassers in an election pertaining to the formation of new counties. Method of conducting appeals, and canvassing returns in such elections indicated.

3. ATTORNEYS—NOTICE—WAIVER—SPECIAL APPEARANCE.—When attorney appears for purpose of special motion or objection, and that being overruled, he remains and participates in proceedings, he waives benefit of special appearance, and will be held to have full notice of subsequent action.

4. COUNTY BOARD OF CANVASSERS.—CERTIORARI will not issue to a board of county canvassers when it appears that the records pertaining to the controversy have in good faith passed out of their hands.

Application in original jurisdiction of this Court by J. C. Martin *et al.* for writ of certiorari directed to G. H. Moore *et al.,* as county board of canvassers for Abbeville County.

*Messrs. Sheppard & Greir,* and *Ellis G. Graydon,* for petitioner.

*Messrs. F. B. Gary* and *W. N. Graydon,* contra.

April 4, 1899.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.  This was an application, addressed to this Court, in the exercise of its original jurisdiction, praying that a writ of certiorari be issued out of this Court, addressed to the respondents, as commissioners of elections for the county of Abbeville, commanding them to certify and return to this Court the record of the proceedings had before them in relation to a certain election hereinafter referred to.  Upon the filing of the petition, an *ex parte* order was obtained from this Court, upon the motion of Messrs. Sheppard & Greir and Mr. Ellis G. Graydon, as attorneys for the petitioners, requiring the respondents herein to show cause before this Court, upon a day specified, why a writ of certiorari should not issue, addressed to the respondents, as commissioners of elections for Abbeville County, commanding them to certify and return to this Court "all the proceedings concerning the protest and contest in the matter of the special election held at Donalds, on the 22d day of November, 1898, to determine the question whether certain portions of Donaldsville, Due West, and Long Cane Townships, in Abbeville County, shall be cut off from Abbeville County and transferred to and incorporated into Greenwood County, had and taken by, and remaining before them, and all papers, documents and evidence of every kind and description on which they acted in arriving at their decision in said matter."  On the day named the respondents appeared and filed their return, which was demurred to by the petitioners.

Under the view which we take of this case, it will not be necessary to set out fully the allegations of the pleadings. It will be sufficient to state here that the election in question, in pursuance of the order of his excellency, the Governor, was held at Donalds on the 22d day of November, 1898, at which the requisite majority of the votes cast appeared, as counted by the managers of the election, to be in favor of the proposition to cut off certain portions of the townships above named from Abbeville County, and transfer the same to the county of Greenwood; that on the Tuesday following said election, the petitioners, as the commissioners of elections for Abbeville County, met at the county seat of said county, and organized as the board of county canvassers; that they proceeded to canvass the votes given as they are canvassed in general elections; that the notice of protest and contest set forth in the seventh paragraph of the petition herein was duly served upon respondents by Messrs. W. N. Graydon and F. B. Gary, as attorneys for the county of Abbeville; "that in order that all persons interested in the said protest and contest might have an apportunity of being present, and being heard upon the same, and your respondents not knowing what persons were so interested, caused a notice to be published in one of the papers of the said county" (a copy of which is set out in the return) to the effect that the board of county canvassers met at Abbeville on the 29th of November, 1898, for the purpose of canvassing the votes cast at said election; that a protest against declaring the election having been filed, the board took a recess until the 6th day of December, 1898, at which time all persons interested in the result of said election will appear before the board for the purpose of taking such action as they may deem advisable; that in addition to this public notice, the respondents, as a board of county canvassers, served upon David Humphreys, one of the managers of said election, and one of the petitioners herein, a certified copy of such protest. It further appears from the allegations in the return, which are admitted by the demurrer, that the respondents, as the board of county

canvassers, then took a recess until the 6th of December, 1898, at which time they reassembled for the purpose of hearing said protest; that the petitioners herein "entered a special appearance, by their attorneys, Messrs. Sheppard & Greir and Ellis G. Graydon, and objected to your respondents, as county canvassers, exercising any judicial functions whatsoever, on the ground that our duties were purely ministerial; that we could do nothing more than canvass the vote and certify the same in tabulated statement to the secretary of State, and upon other grounds which are set forth in the paper filed with us and copied in the 9th paragraph of the petition herein." That respondents, after argument, held that they had the right and it was their duty to hear any protest or contest that may be filed with them; and that after this the petitioners, by their attorneys, remained throughout, and participated in the hearing of the protest, cross-examined the witnesses and argued the case on its merits. The board of county canvassers heard the testimony as to the manner of conducting said election, the substance of which is stated in the return, and held that said election was "fatally irregular and illegal." From this conclusion or judgment of the board of county canvassers there was no appeal. Thereupon the respondents, as the board of county canvassers, forwarded to the secretary of State a tabulated statement of the vote which had been canvassed, together wth "all the papers of every kind pertaining to the said election and protest and contest, and that they have not now before them any papers whatsoever concerning the said special election."

From this statement of facts, as disclosed by the pleadings, it seems to us that there are two insuperable objections to issuing the writ prayed for: 1st. That the petitioners had another remedy, to wit: by appeal to the State board of canvassers from the action of the board of county canvassers, and for that reason they have no right to a writ of certiorari. 2d. Because the allegation in the return, which is admitted by the demurrer, that respondents, before this proceeding was commenced, had sent all the papers pertaining to said

election and protest to the secretary of State, and that they have not now before them any papers whatsoever concerning the said election, shows that it would be impossible for the respondents to comply with the requirements of the writ even if petitioners were, otherwise, entitled to it; and for this reason, if there were no other, the prayer of the petition should not be granted.

As to the first objection, it is well settled a writ of certiorari cannot be used as a substitute for an appeal or writ of error. 4 Ency. Pl. & Prac., 51, and the cases there cited; *State* v. *Senft.,* 2 Hill, 367; *State* v. *Steuart,* 5 Strob., 29. Hence where the right to appeal is provided for, that mode of correcting errors of law in an inferior tribunal must be resorted to, and the writ of certiorari will not be allowed.

The next inquiry, therefore, is, whether the right of appeal has been provided for in a case like this. In sec. 174 of the Rev. Stat. of 1893, the commissioners of election for certain officers therein named are required to meet at the county seat on the Tuesday next following the election, "and shall proceed to organize as, and shall be, the county board of canvassers." In sec. 175, it is provided that "The said board of county canvassers * * * shall then proceed to canvass the votes of the county * * * The said boards, respectively, shall have the power, and it is hereby made their duty, as judicial officers, to decide all cases under protest and contest, as they may arise, subject to appeal to the board of State canvassers." And in sec. 186— provision having been made in the preceding sections for the board of State canvassers—it is declared that: "They shall have power, and it is made their duty, as judicial officers, to decide all cases under protest or contest that may come before them on appeal from the decision of the county board of canvassers." It is true, that these statutory provisions originally applied only to the election of certain officers, specified in section 174; but by an act approved 2d of March, 1896, 22 Stat., 55, it is declared: "That all laws now of

force, relating to the formation of county and State boards of canvassers, and defining their powers, duties and liabilities, * * * be, and the same are hereby, continued of force, *and applicable to all elections* (italics ours) held under the Constitution ratified on the 4th day of December, 1895, until repealed or amended ·by the General Assembly." The election now under consideration being an election held under the present Constitution, it seems clear that the legislation above referred to is applicable to this election; and if so, then it follows necessarily that the petitioners had a right of appeal from the decision of the county board of canvassers; and not having availed themselves of this right, they are not now entitled to a writ of certiorari as a substitute for such appeal. In addition to this, certain provisions contained in sections 3 and 4 of the act of 1896, 22 Stat., 64, under which the election here in question was held, tend to support the view above advanced. For in sec. 3 it is declared that: "Such election shall· be ˙conducted in the same manner as general elections in this State;" and the language used in sec. 4, requiring that the commissioners of elections, who, as we have seen, constitute the board of county canvassers, "shall canvass the returns of the managers of each precinct in their county at which such election has been held as such returns in general elections in this State are canvassed," may well be regarded as implying an intention on the part of the legislature that an election of this kind shall be conducted, in all respects, as general elections, in which, as we have seen, the right of appeal from the decision of the board of county canvassers to the State board of canvassers is provided for. Reading the statutory provisions above referred to together, the scheme of the law in reference to an election like this seems to be as follows: the managers of the election make their returns to the commissioners of elections, who are required to meet at the county seat on the Tuesday next following the day of election, organize as a board of county canvassers, and proceed to canvass the votes of the county, and to hear and decide, as judicial officers, all cases under

36—54

protest or contest that may arise, subject to appeal to the board of State canvassers. If there be no such appeal, as in this case, then the board of county canvassers shall certify the result of the election to the secretary of State, and forward to that officer the papers upon which they acted, as was done in this case. It seems to us, therefore, that the first objection, to the issuance of the writ of certiorari above stated, which we have been considering, is well founded, and for this reason the writ should not be issued.

It is contended, however, that the petitioners had no notice of any protest of the election before the board of county canvassers, and, therefore, they cannot be affected by any action which said board took in reference to such protest. But, as a matter of fact, it appears that at least one of the petitioners, David M. Humphreys, was duly notified, for it is so alleged in the return and admitted by the demurrer. But, in addition to this, it also appears by the return that the petitioners appeared by counsel before the board of county canvassers, cross-examined the witnesses, and participated in the argument on the merits. In view of this the petitioners cannot avail themselves of the fact (if it be a fact) that they were not served with *formal* notice of the protest. It is true, that the petitioners first entered a special appearance and objected to respondent's exercising any judicial functions whatever, insisting that their duties were purely ministerial; but when such objection was overruled—properly, as we have seen—they remained and participated in the hearing and discussion of the case on its merits. By so doing they waived any benefit of such special appearance, and cannot now be heard to say that they had no notice, when, as matter of fact, they did have full notice of the action of the board, and might and should have availed themselves of their right of appeal from such action.

We are of opinion, also, that the second objection, above stated, to the issuance of the writ prayed for, is equally well founded. As is said in 4 Ency. of Pl. & Prac., 31-32: "The writ of certiorari is not a writ of right, but will be granted or

denied in the discretion of the Court, according to the circumstances of each particular case, as justice may require. When, therefore, it appears that the body to which the writ is to be directed has, in good faith, parted with the possession and control of the record, which the writ would require the production of, surely no Court would issue a mandate which it was known could not be complied with. Now in this case it appears that the respondents had parted with the possession and control of all the papers pertaining to said election by sending them to the secretary of State, "and that they have not now before them any papers whatsoever concerning the said specal election." It is manifest, therefore, that the respondents would find it impossible to comply with the mandate of the writ as prayed for; and there being no allegation or pretense of any bad faith on the part of the respondents in thus parting with the possession and control of the record, which petitioners desire to have brought up to this Court, the writ of certiorari prayed for should not issue. See 4 Ency. Pl. & Prac., 176-180. See, also, Commander's Case, 1 Strob., at page 198, where O'Neall, J., in delivering the opinion of the Court, plainly recognizes this view. In addition to this, it will be observed that the order of this Court only requires respondents to show cause why they should not be required by the writ of certiorari to certify and return into this Court all the proceedings "had and taken by, *and remaining before them,*" in relation to the said election; and when the respondents show by their return, which is not traversed, that there are no proceedings remaining before them, as such proceedings have been transferred to the possession and control of the secretary of State, it would seem that they have shown sufficient cause why the writ should not issue.

The judgment of this Court is, that the rule be discharged and that the petition be dismissed.