15986

McLURE v. McELROY ET AL.

(44 S. E. (2d) 101)

*Mr. Huger Sinkler,* of Charleston, for Appellant,

*Messrs. Barron & Barron,* of Union, for Respondents,

September 3, 1947.

STUKES, J.: Act No. 848 of the Acts of the General Assembly of 1946, approved March 13, 1946, 44 Stat. 2521, created a District of Union County for the construction and operation of a public hospital and authorized the governing board to issue bonds of the district to the extent of $500,-000.00, payable, principal and interest, from the proceeds of property taxes assessed and collected by the county officers under the direction of the Board. The latter was conditioned upon the favorable result of an election to be called by the Board, participated in by the qualified electors resident in the district, upon the question of the issuance of the bonds.

Later at the same session of the General Assembly by Act or Resolution No. 850, approved March 23, 1946, 44 Stat. 2527, it was proposed to amend Sec. 5, Art. 10, of the Constitution of 1895, by adding at the end of the following:

"Provided, That the limitations imposed by this Section shall not apply to Union Hospital District, Union County, State of South Carolina, said Union Hospital District being hereby expressly authorized to issue bonds to an amount not to exceed twenty (20) per centum of the value of all taxable property embraced in said hospital district, as valued or assessed for taxation by the State, the proceeds of such bonds to be applied solely to the purpose of acquiring property, erecting or enlarging building or buildings and purchasing equipment for the construction, establishing and

maintenance of a public hospital and appurtenances in said Union Hospital District or paying any indebtedness incurred for said purposes, under such restrictions and limitation as the General Assembly may prescribe, and where the question of incurring such indebtedness is to be submitted to the qualified electors of said Union Hospital District, as provided in the Constitution upon the question of bonded indebtedness."

The proposed amendment to the Constitution received a majority favorable vote of the electors of the State at the general election in November, 1946. It was ratified at the ensuing session of the General Assembly by enactment No. 19, approved Feb. 27, 1947, 45 Stat. ——, and thereby finally and formally became a part of the constitution.

Meanwhile the members of the board had been appointed in accord with the terms of the 1946 act and they organized about June 1st of that year and ordered the bond election which was authorized by the act. It was held July 9, 1946, and resulted favorably for the issuance of the bonds, 659 to 23. But the board did not promptly offer the bonds for sale, in apparent waiting for the final ratification of the constitutional amendment at the legislative session of 1947.

This action was commenced in April last by a resident taxpayer of Union County and, therefore, of Union Hospital District, who alleged that the board was about to issue bonds which he seeks to restrain upon the alleged invalidity of the act upon several constitutional grounds. They will be detailed in our discussion of them. Decision of the circuit court was adverse to all of the contentions, and this appeal followed.

The first and the last points of attack are largely answered by the amendment to the constitution, which has been quoted. They relate to the creation of a hospital district of a county with the delegaion of appropriate powers to the governing board, and question the validity of the bond election which was held prior to completion of the constitutional amend-

ment process. We state the first question from the appellant's brief: "May the General Assembly create one of the counties of South Carolina, into a special purpose district and delegate to the governing body of such district the function of levying and collecting taxes for the purpose of establishing and operating a hospital?"

A public hospital is a proper county purpose. *Smith v. Robertson,* 210 S. C. 99, 41 S. E. (2d) 631. A township may be authorized to erect and operate one under the management of a specially created commission. *Battle v. Willcox,* 128 S. C. 500, 122 S. E. 516. In view of these authorities there is no reason apparent why the legislature cannot, without the aid of constitutional amendment, create of a county, as here, a hospital district for the construction and operation of such an institution. It thereby becomes the corporate purpose of the district which is a governmental subdivision of the State. Parallel is seen in the highway and bridge districts which have been created from time to time by the legislature to accomplish that public and corporate purpose. *Bagnall v. Clarendon & Orangeburg Bridge District,* 131 S. C. 109, 126 S. E. 644; *Briggs v. Greenville County,* 137 S. C. 288, 135 S. E. 153; *Evans v. Beattie,* 137 S. C. 496, 135 S. E. 538. Later mention will be made of appellant's contended differentiation of the cited cases from that in hand.

Included in the quoted first question is the objection that the act improperly delegates to the governing board of the hospital district the power to levy taxes. But upon examination such is not found. It is the legislature itself which levies the taxes and Sec. 16 of the act directs the assessment and collection by the county officers. The fixing of the amount is a ministerial duty of the board and will be regulated by the necessities which in turn will depend upon the maturities of the principal and interest of the bonds which may be issued, within the legislative limit upon the amount of them. There is no attempted delegation of the legislative taxing power. *Evans v. Beattie, supra,* 137 S. C.

496, 135 S. E. 538. The situation is not unlike that of every county, with respect to the financing of its ordinary functions. The legislature levies the taxes, with the rates often fixed by the county officers in the discharge of their ministerial duties under the applicable special legislative acts.

The last question argued, which is number five, suggests that the bond election was premature, that it should have awaited the ratification at the 1947 legislative session of the constitutional amendment which was proposed by the legislature at the 1946 session and adopted by the people (the qualified electors who participated) at the general election of that year. Stress was laid in argument upon the futurity of the reference in the amendment to the election, as follows: "* * * where the question of incurring such indebtedness is to be submitted to the qualified electors," etc. But consideration of the several related enactments together, which is proper for the construction of each of them in order to determine the intention, makes plain that the language was used by the legislature in contemplation of the election which was at the same time authorized to follow and not to another election at some other, future time. With this meaning the electors adopted the amendment, which action similarly evidenced their intention.

Moreover, the subsequent approval of the bonds at the polls, the adoption of the constitutional amendment at the general election and, finally, the ratification of the amendment at the ensuing session of the legislature must likewise be considered together, remembering the relation of them to the proposal to amend the constitution and the relation of each to the others, in connection with the act creating the hospital district. In this light they are seen as one composite whole and the final approval of the constitutional amendment was a sort of confirmation of the intervening election. This conclusion is not without analogous precedent. *Lucas v. City of Florence,* 103 S. C. 169, 87 S. E. 996; *Robinson v. Askew,* 129 S. C. 188, 123 S. E. 822; *Covington v. McInnis,* 144 S. C. 391, 142 S. E. 650; *Brailsford v. Walker,* 205

S. C. 228, 31 S. E. (2d) 385. Implicit now in the constitution, perforce the amendment, is authorization for the creation and operation of Union Hospital District under applicable enactments of the General Assembly. If there was valid doubt before of the constitutionality of the enterprise, it is removed by the present contents of the constitution itself. *Brailsford v. Walker, supra.*

The consideration last stated renders unnecessary discussion of appellant's argument that the General Assembly cannot under the constitution (prior to the presently pertinent amendment, we interpolate) create a special district on which taxes are levied except to provide funds for local benefits or improvements where the tax may be accurately likened to a special assessment, which he contends is a foundation stone of our former decisions upon the subject. The soundness of the contention will not be examined for the purpose of this decision (see, however, *Ashmore v. Greater Greenville Sewer District et al.,* S. C. 44 S. E. (2d) 88) because, as said, it is unnecessary to do so in view of the constitutional amendment whereby this special district is authorized. But it is well to repeat the bedrock rule which governs the determination of the constitutionality of a statute, which is that the State constitution is not the source of the legislative power of the General Assembly but, on the contrary, only contains limitations upon it. In the absence of restraint in the constitution such power is virtually unlimited. Therefore, one who assails the constitutionality of an act of the General Assembly is bound to point out a provision of the constitution which it offends. Because of the amendment, the opposite situation exists here.

Incidentally, original provisions of the Constitution of 1895 create of each county an Election District. Art. III, Sec. 3; Art. VII, Sec. 9. And combinations of counties are expressly authorized to be utilized by the General Assembly to form Judicial Circuits, which may as well have been called "districts"; and likewise with respect to Congressional Districts. Art. VII, Sec. 13. Counties are clearly not inviolate

as such under the constitution. On the contrary, it was contemplated by the framers that they should be used as units of various aspects of government and, in combination, for the formation of larger subdivisions of the State. The highway districts involved in the decisions cited *supra* are concrete examples of the policy in practice.

Thus the first and fifth (last) questions are found to be without merit. The second and third propositions may also be considered together. They impute unconstitutionality to the enabling act because of the qualifications which it prescribes for the members of the governing board. It omits to say that they shall be qualified electors which is required of all officers "in this State," whether elected or appointed, by Sec. 1, Art. XVII, of the Constitution. This need not be expressly provided in an act of the legislature which creates an office. It may be said to be necessarily implied. Certainly the constitution cannot be circumvented by the omission. The act under review indicates no intention of evasion, which will not be presumed; and the record shows that the hospital board members possess the qualifications of electors, in accord with the cited constitutional requirement.

The other feature of the attack upon the qualifications for board membership prescribed by the act is of more substance. It relates to the provision that three of the seven members shall be "medical doctors and practicing physicians within Union Hospital District". The challenge is upon the broad ground that the legislature cannot add. to the qualifications of public officers which are prescribed in the constitution.

Besides the requirement that officers, elected or appointed, shall possess the qualifications of electors (Art. XVII, Sec. 1) which has been referred to, the constitution provides as follows: Art. 1, Sec. 10, every qualified (under the constitution) elector shall be eligible for election to public office, and Sec. 11 bars statutory property qualifications and duelists; Art. II, Sec. 2, repeats that every qualified elector shall

be eligible "to any office to be voted for, unless disqualified by age, as prescribed in this Constitution".

The State and its activities and those of its numerous sub-divisions have expanded tremendously since the adoption of the constitution in the year 1895. Many offices for the per-formance of public duties which were not within the contem-plation of the framers have been subsequently created by the legislature; and it is not unusual for that body to prescribe additional qualifications of the various statutory officers, which are calculated to insure competent administration of the laws which they execute. The question presented is there-fore a serious one. It was answered adversely to appellant in the lower court by the conclusion that the constitutional provisions (Art. I, Sec. 10, and Art. II, Sec. 2) refer ex-pressly to "election" and "to be voted for" which restricts the constitutional eligibility of every qualified elector to that of an elective office, whereas the office of hospital trustee, here involved, is an appointive one. It is filled by appoint-ment of the governor upon the recommendation of the Union County legislative delegation (Sec. 2, 44 Stat. 2522) which we agree is not an election. The conclusion may be sound but we do not adopt it for the same result is reached upon what we consider a broader and more satisfactory ground, which will be adverted to presently.

Appellant cites two North Carolina decisions. The first is *Spruill v. Bateman,* 162 N. C. 588, 77 S. E. 768, Ann. Cas. 1915-B, 515. The Constitution of that State, Art. VI, Sec. 7, provides: "Every voter in North Carolina, except as in this article disqualified, shall be eligible to office". The legislature created the office of Recorder for the Court of Plymouth and provided in the act that the person elected to such office should be a qualified voter of the county, a man of good moral character and a licensed attorney. Bate-man, who was not a licensed attorney, received a majority of the votes in the ensuing election, which was held, to fill the office. Suit was brought by Spruill who was the runner-up in the election and was a licensed attorney, in an effort

to oust Bateman upon the ground of his disqualification under the act, and obtain the office for himself. It was held in an opinion by Chief Justice Clark that the explicit constitutional provision, which has been quoted, controlled, and qualifications for office could not be added by legislative act, without violation of the constitution; and that therefore Bateman was entitled to the office. It was pointed out that where a constitution provides merely that no one shall be elected or appointed to any office unless he be a voter or elector, it is generally held that the legislature can prescribe additional qualifications, but the wording of the North Carolina Constitution is different and it plainly provides that every voter shall be eligible, which makes unconstitutional any attempt of the legislature to add a qualification for eligibility.

The later decision cited is *Cole v. Sanders,* 174 N. C. 112, 93 S. E. 476, 478, Ann. Cas. 1918-D, 1033, which involved an act of the legislature providing that where "feasible and practicable" there should be elected as township highway commissioners at least one members of each of the two major political parties in the township. Ingrams Township of Johnson County elected all of one party and the incumbents, of another and defeated for re-election, attempted to retain their offices by reason of the alleged disqualification of the electees under the statute. The effort failed and the case went off on the point that the act was not mandatory in the feature mentioned. Chief Justice Clark concurred separately and went over again the ground of *Spruill v. Bateman, supra.* We quote from his opinion:

"There is ample authority, however, for the proposition that the qualifications prescribed for office in a Constitution apply only to offices created therein or authorized by it (as was the case in *Spruill v. Bateman, supra,* who was elected judge of recorder's court which the Legislature was authorized to create by Amendment of 1876, art. 4, sec. 12). In *Scown v. Czarnecki,* 264 Ill. [305], 312, 106 N. E. [276], 279, L. R. A. 1915-B, 247, Ann. Cas. 1915-A, 772,

it is held in a full discussion, with ample citation of authority, that the constitutional requirements apply only 'to elections provided for by that instrument. The qualifications of voters at such elections are fixed by the Constitution, and the Legislature cannot change them. Other elections, however, provided for only by statute and not by the Constitution, are wholly within the control of the Legislature'. The distinction between offices of constitutional origin and those created by statute as to their control by the Legislature has been repeatedly recognized, and the rule has been often announced that an office created by legislative action is wholly within the control of the Legislature which can declare the manner of filling it, how, when, and by whom the incumbent shall be elected or appointed, and to change from time to time the mode of election or appointment. *People [ex rel. Dunham]* *v. Morgan,* 90 Ill. 558, and numerous other cases cited in *Scown v. Czarnecki,* 264 Ill. 312, 106 N. E. 276, L. R. A. 1915-B, 247, Ann. Cas. 1915-A, 772. In *State [ex rel. Attorney-General]* *v. Dillon,* 32 Fla. 545, 14 So. 383, 22 L. R. A. 124, *Buckner v. Gordon,* 81 Ky. 665; *Hanna v. Young,* 84 Md. 179, 35 A. 674, 34 L. R. A. 55, 57 Am. St. Rep. 396; *Plummer v. Yost,* 144 Ill. 68, 33 N. E. 191, 19 L. R. A. 110, and many other cases it is held that; 'Constitutional provisions prescribing the qualifications of electors do not apply to any election for municipal offices, not provided for by the Constitution, but created by legislative enactment.' "

There is an annotation upon the subject in 19 Ann. Cas. 743 in which, upon the consideration of numerous authorities, it is concluded that it is well settled as a general proposition that as to a public office not created by the constitution the legislature may define the qualifications for holding the same, if the constitution is silent on the subject; and if the constitution has prescribed certain qualifications, the legislature may prescribe additional qualifications not expressly or impliedly prohibited by the constitution. But qualifications prescribed by the legislature which are inconsistent with any constitutional provision are, of course, in-

valid. In the subject case of the annotation, *State ex rel. v. Goldthait,* 172 Ind. 210, 87 N. E. 133, 19 Ann. Cas. 737, it was said that the legislature cannot impose additional qualifications for offices created by the constitution. Other authorities are cited to the same effect.

More recent decisions are referred to in the annotation in 47 A. L. R. 481, which relate particularly to the power of the legislature to prescribe qualifications for, or conditions of eligibility to, constitutional offices. That is not our case. Here we are dealing with a statutory office and need go no further in our decision than that. However, we quote the summation of the editor to show the converse of our conclusion: "With but one exception, the courts have recognized the general rule that when a state Constitution names the qualifications for a constitutional office, the legislature has no authority to prescribe additional qualifications, or to remove any of the requirements provided for in the Constitution, unless that instrument, expressly or by implication, gives the legislature such power".

Throop on Public Officers, in Section 73, page 82, suggests as proper a very broad rule, as follows: "The general rule is that the legislature has full power to prescribe qualifications for holding office, in addition to those prescribed by the constitution, if any, provided that they are reasonable, and not opposed to the constitutional provisions, or to the spirit of the constitution. Thus it is believed that there can be no valid constitutional objection to the statutes, which are now very common, prescribing special qualifications for particular offices, as that the person filling the same shall be a lawyer, a physician, an architect, or otherwise skilled in the particular duties devolved upon him by the office". Mechem in his work on Public Offices and Officers concludes, (at pages 22, 23, Secs. 64-67) that where constitutional provisions for eligibility to public office are exclusive in their nature, they are of course supreme and it is not within the power of the legislature to supersede, evade or alter them; but where the constitution is silent, the legisla-

ture may speak; and if there are constitutional provisions, not construed as exclusive, the legislature may add such other qualifications as are reasonable and proper. This author states the general rule to be that those who are competent to vote shall be deemed competent to hold office, but he adds that this is not a universal rule and many cases exist where it does not apply. The editions of the texts drawn from are quite old and we cite them principally to show that the doctrine we announce has long been recognized by the leading writers on the subject.

The only former case from this court touching the question seems to be *State v. Williams,* 20 S. C. 12, in which the eligibility of the successful candidate for Clerk of Court of Berkeley County was under fire. He had been appointed Supervisor of Registration under a statute which provided ineligibility for any other office during the term of the appointment. It was decided that his term as Supervisor of Registration had expired for lack of Senate confirmation before his election as Clerk, but the court held that regardless of such he was not disqualified to become clerk by the statutory provision. The matter arose under the Constitution of 1868 and Sec. 31 of Art. 1 of that document (the same as Sec. 10 of Art. 1 of the current constitution) was quoted as follows: "All elections shall be free and open, and every inhabitant of this commonwealth, possessing qualifications provided for in this Constitution, shall have an equal right to elect officers and be elected to fill public office". Also cited was Sec. 7 of Art. VIII, of which there is no true counterpart in the present constitution, as follows: "Every person entitled to vote at any election shall be eligible to any office which now is or hereafter shall be elective by the people in the county where he shall have resided sixty days", etc.

The court held briefly, without citation of decision or text authority, that the existing appointment of the defendant as supervisor of registration was not a disability (for the office of Clerk) under the constitution and could not be made so by valid act of the legislature for such an attempt was violative

of the Constitution, particularly the last above quoted provision (Art. VIII, Sec. 7). The decision is distinguished from this case for it involved eligibility for election to a constitutional office, that is, the office of Clerk of Court which was created by Art. IV, Sec. 27, Constitution of 1868. No mention was made of statutory offices. Moreover, there is some difference in the constitutions of 1868 and 1895 (now in force), as has been pointed out; and there was another approved ground for the result of the decision, as will be more fully seen by reference to the report of it.

Very similar distinction to that which is controlling of this case, between constitutional and statutory officers, was made in *State ex rel. Huckabee v. Hough,* 103 S. C. 87, 87 S. E. 436, and *Walpole v. Wall,* 153 S. C. 106, 149 S. E. 760. Construing our present constitution (and following *State v. Williams, supra,* 20 S. C. 12, to the extent of its authority), we think its meaning is that all officers, constitutional and statutory, and whether elected or appointed, must be qualified electors, and the legislature may not add other conditions for eligibility to those specified in the constitution for election or appointment to constitutional offices, that is, those offices created by the constitution; but as to offices established only by legislative acts, the General Assembly may prescribe other and additional qualifications which are reasonable in their requirements. As is said in 42 Am. Jur. at page 910; "An enactment defining qualifications for office or a particular office would be invalid where it constitutes class legislation and grants unequal privileges and immunities * * *." But there is no contention in this case that the qualification that three of the seven board members shall be practicing physicians offends in this particular, and we do not think that it does.

It should be added that it is easily conceivable that the General Assembly might run afoul of other State or Federal constitutional provisions by prescribing qualifications of eligibility for statutory offices, such as, for instance, unconstitutional discrimination on account of race or religion. In

the present case the requirement that three members of a board of seven created to construct and operate a hospital shall be practicing medical doctors in the district appears to be quite reasonable and wise, certainly not arbitrary or discriminatory. There is patent relation between the added qualification and the duties of the office; and only a minority of the board need be so qualified.

There remains for disposition only appellant's fourth question. It arises by reason of the admitted fact that three of the seven board members held, at the time of their respective appointments, other offices of honor and profit. Sec. 2 of Art. II of the Constitution of 1895 is cited, as follows: "But no person shall hold two offices of honor or profit at the same time". This issue is controlled by *Clarke v. South Carolina Public Service Authority*, 177 S. C. 427, 181 S. E. 481. By coincidence, there, too, three directors out of seven were alleged to have held other offices at the time of their appointment to the Board of Directors of the Authority. It was held, in accord with former precedents, that an officer has good title to the latest office to which he is appointed, and for the holding of which he has duly qualified, which means that he is the incumbent *de jure*. The result in issue here is obvious; the Hospital Board is legally constituted. The question of the status of the offices formerly held by the three affected board members is not before the Court in this litigation.

The exceptions are overruled and the judgment affirmed.

BAKER, C.J., and FISHBURNE, J., concur.

TAYLOR and OXNER, JJ., concur in result.

OXNER, Justice (concurring in result).

I prefer not to express an opinion as to whether the provisions in Article I, Section 10, and Article II, Section 2, of the Constitution relating to eligibility to office apply only to those offices created by the Constitution. I agree that these constitutional provisions do not apply to the office of hos-

pital trustee created by this act. This is as far as it is necessary to go in this case. I, therefore, concur in the result.

TAYLOR, J., concurs.