17179

*Ex Parte* B. F. TIPTON, Intervening Petitioner-Appellant, *In re* SHERWOOD SMITH, Plaintiff, v. ED B. SMITH, E. ROY STONE, JR., MRS. D. A. TILLINGHAST, JOHN DRAKE, C. DOUGLAS WILSON, L. E. BROOKSHIRE, TOM TURNER, LEON CAMPBELL, L. M. GLENN, Constituting the Board of Trustees of Greenville Memorial Auditorium District, and JOHN P. ASHMORE, BELTON R. O'NEALL, J. A. BARRY, ANSEL M. HAWKINS, Constituting the County Board of Commissioners of Greenville County, Respondents.

(93 S. E. (2d) 640)

*Messrs. Rainey, Fant, Brawley & Horton,* and *Wyche, Burgess & Wyche,* and *Haynsworth, Perry, Bryant, Marion & Johnstone,* all of Greenville, *for Intervening Petitioner-Appellant,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-ville and *Sinkler, Gibbs & Simons,* of Charleston, *for De-fendants-Respondents,*

*Messrs. Rainey, Fant, Brawley & Horton,* and *Wyche, Burgess & Wyche,* and *Haynsworth, Perry, Bryant, Marion & Johnstone,* all of Greenville, *for Intervening Petitioner-Appellant, in Reply,*

July 3, 1956.

LEGGE, Justice.

The essential issue here involved is whether or not a certain proposal to amend Article X, § 5, of the Constitution of South Carolina was properly submitted to the voters in the general election of November 2, 1954.

Article X, § 5, imposes two limitations upon the power of a municipal corporation to incur bonded indebtedness, *viz.*: (a) that its bonded debt shall not exceed eight per cent of the assessed value of all taxable property within its boundaries; and (b) that "wherever there shall be several political divisions or municipal corporations covering or extending over the territory, or portions

thereof, possessing a power to levy a tax or contract a debt, then each of such political divisions or municipal corporations shall so exercise its power to increase its debt under the foregoing eight per cent limitation that the aggregate debt over and upon any territory of this State shall never exceed fifteen per centum of the value of all taxable property in such territory as valued for taxation by the State."

Greenville Memorial Auditorium District is a municipal corporation in Greenville County. In connection with the contemplated issuance of bonds for the purpose of constructing a public auditorium within the district, as authorized by Act No. 534 of 1949, XLVI Stat. at L., p. 1258, it developed that the bonded debt of the district, after the issuance of said bonds, would still be within the eight per cent limitation, but would exceed the fifteen per cent overall limitation before mentioned. Validation of the proposed bond issue required, therefore, amendment of Article X, § 5, by removing the fifteen per cent overall limitation as to these bonds. To this end, on March 20, 1954, the General Assembly adopted the following Joint Resolution, XLVIII Stat. at L., p. 2175:

"A Joint Resolution Proposing An Amendment To Section 5 of Article X of The Constitution Of 1895, So As To Provide A Limitation Upon The Bonded Indebtedness Of Greenville Memorial Auditorium District, In Greenville County, South Carolina.

"Be It Enacted by the General Assembly of the State of South Carolina:

"Section 1. There is proposed the following amendment to Section 5, Article X, of the Constitution of this State: add at the end of the section the following: 'Provided, that the limitations imposed by this Section 5, Article X, shall have no application to the bonded indebtedness of Greenville Memorial Auditorium District, in Greenville County, South Carolina, and the Greenville Memorial Auditorium District may incur bonded indebtedness for corporate purposes to an

amount not exceeding eight per cent of the assessed value of all the taxable property in the district.'

"Section 2. The proposed amendment shall be submitted to the qualified electors at the next general election for representatives. Ballots shall be provided at the various voting precincts with the following words printed or written thereon: 'Shall Section 5, Article X of the Constitution of this State be amended so as to permit Greenville Memorial Auditorium District in Greenville County to incur bonded indebtedness to an amount not exceeding eight per cent of the assessed value of all taxable property in the district?

> In favor of the amendment ☐
> Opposed to the amendment ☐

Those voting in favor of the amendment shall deposit a ballot with a check or cross mark in the square after the words "In favor of the amendment", and those voting against the amendment shall deposit a ballot with a check or cross mark in the square after the words "Opposed to the amendment" ' ".

The ballot as submitted to the voters in the general election read as follows:

"No. 5

Greenville County

A Joint Resolution Proposing An Amendment to Section 5 of Article X Of The Constitution of 1895, So As To Provide A Limitation Upon The Bonded Indebtedness Of Greenville Memorial Auditorium District, In Greenville County, South Carolina.

> In favor of the amendment ☐
> Opposed to the amendment ☐"

A majority of those voting upon the question as thus submitted voted "in favor of the amendment".

It will be noted from the foregoing:

1. That the necessary and only purpose of the desired constitutional amendment was the removal of the fifteen per cent overall debt limitation;

2. That the title of the proposing resolution indicated that the purpose of the proposed amendment was not to remove, but "to provide a limitation" upon the district's bonded indebtedness;

3. That the proposing resolution set out the exact words in which the question of adopting the proposed amendment should be printed or written on the ballot for submission to the voters;

4. That the question as thus phrased in the proposing resolution was in itself misleading, inasmuch as it made no clear reference to the real purpose of the desired amendment, to wit: the removal of the fifteen per cent limitation, but on the contrary referred only to the eight per cent limitation, which already existed and was not to be affected; and

5. That the ballot did not submit the question in the language prescribed by the proposing resolution, but submitted instead the misleading title of the resolution.

The Courts are slow to strike down either the legislative proceedings or the election incident to the adoption of a constitutional amendment, and will indulge every reasonable presumption in favor of their validity. As was said in *State ex rel. Corry v. Cooney*, 70 Mont. 355, 225 P. 1007, 1009: "The question is not whether it is possible to condemn the amendment, but whether it is possible to uphold it, and we shall not condemn it unless in our judgment its nullity is manifest beyond a reasonable doubt".

It is not necessary that the question on the ballot include the full text of the proposed amendment; it is sufficient that it describe the amendment plainly, fairly, and in such words that the average voter may understand its character and purpose.

"It must be complete enough to convey an intelligible idea of the scope and import of the proposed law. It ought not to be clouded by undue detail, nor yet so abbreviated as not to be readily comprehensible. It ought to be free from any misleading tendency, whether of amplification, of omission,

or of fallacy. It must contain no partisan coloring. It must in every particular be fair to the voter to the end that intelligent and enlightened judgment may be exercised by the ordinary person in deciding how to mark the ballot". *In re Opinion of Justices,* 271 Mass. 582, 171 N. E. 294, 297, 69 A. L. R. 388.

The question is sufficiently propounded to the voters by printing on the ballot the title of the proposing resolution, if such title fairly shows the purpose of the amendment. *Fleming v. Royall,* 145 S. C. 438, 143 S. E. 162.

And where the ballot is challenged because of the form of the question proposed, rather than its substance, evidence that the voters were in fact misled may be required to overcome the presumption to which we have referred. *Bolt v. Cobb,* 225 S. C. 408, 82 S. E. (2d) 789.

But where the question, on its face, is manifestly erroneous and misleading, there is no room for presumption, nor is evidence, other than the ballot itself, needed to demonstrate the deception.

In *Heinitsh v. Floyd,* 130 S. C. 434, 126 S. E. 336, 337, the resolution proposed to amend Article X, § 5, by removing the fifteen per cent limitation upon certain bonds to be issued by the City of Spartanburg, but added a proviso reimposing the fifteen per cent limitation. The ballot submitted the question in the words of the title of the resolution, which made no mention of the proviso. To quote briefly from the opinion in that case:

"Under the submitting resolution and the ballots employed in this case it cannot be said that the proviso was adopted. It is true that an amendment will not be held invalid by reason of its submission under an incomplete title. But, in this case, insofar as the proviso is concerned, the title and the ballots were deceptive; and the admitted facts show that the electors thought that their favorable votes would accomplish a con-

trary result. To give effect to the proviso under these circumstances would be to approve the submission of constitutional amendments under forms which would procure their adoption by deceit. Even though a submitting resolution were not required to have any title at all, nevertheless it would be mocking the faith of the people to permit the employment of false and misleading titles to seduce their support of measures they would otherwise condemn".

The opinion in the *Heinitsh case* does not set forth in detail the "admitted facts" upon which the court concluded that the electors had been misled, and the quoted words do not necessarily imply that evidence on the point, other than the resolution and the ballot themselves was offered. Certainly the decision required no such additional evidence to support it, for it was manifest from the ballot itself that the proviso contained in the body of the resolution, but not mentioned in its title, had not been fairly presented to the voters.

In *Lane v. Lukens*, 1929, 48 Idaho 517, 283 P. 532, the resolution proposed to amend the constitution by changing the terms of office of certain State officials from two years to four years. The question directed by the resolution to be submitted to the voters, and so submitted, was: " ' "Shall section 1 of article IV of the Constitution be amended to provide that the term of office of Governor, Lieutenant Governor, Secretary of State, State Auditor, State Treasurer, Attorney General and Superintendent of Public Instruction shall be limited to four years?" ' " The court held the amendment void, for the reason that the question as so submitted was improper and misleading in that it suggested a maximum term, rather than the fixed one intended by the resolution.

In *Bradley v. Hall*, 1952, 220 Ark. 925, 251 S. W. (2d) 470, 471, the purpose of the proposed amendment was to enable the General Assembly to legalize service charges and credit price differentials previously considered usurious, but the ballot described it as one to empower the General Assembly " 'to enact laws to authorize, define, and limit

charges, in addition to interest, in connection with the lending of money and commercial transactions' ". The court, holding the ballot insufficient and misleading, said:

"The fair implication of the phrase [authorize, define, and limit] as a whole is that the legislature is to be given new and additional power to curb charges in addition to interest. Yet this implication has a manifest tendency to mislead, since the true purpose of the amendment is pretty nearly the exact opposite."

In the case at bar the erroneous title of the resolution, which was printed on the ballot as the question proposed, was palpably deceptive and misleading for the reasons before stated. The true import of the proposed amendment, which was to remove, not provide, a debt limitation, was, therefore, not fairly and intelligibly presented to the voters; and it follows that the election must be declared invalid.

Respondents suggest, however, that whatever defect or insufficiency may have existed in the ballot was cured by the fact that the full text of the proposing resolution was posted in each voting place as required by Section 23-321 of the 1952 Code. We do not agree. It is the ballot, not the posted notice, with which the voter comes into direct contact. The reasonable assumption is that he reads the question proposed on the ballot, and that his vote is cast upon his consideration of the question as so worded. *Keenan v. Price,* 1948, 68 Idaho 423, 195 P. (2d) 662. Moreover, the resolution itself was unfairly and deceptively phrased, as we have before pointed out. Had it been printed in full on the ballot, it would still not have accomplished the fair and intelligible submission of the question to which the electorate is entitled and which the law requires.

Let it be said in fairness to all concerned that the record nowhere suggests any intentional deception or impropriety in the drafting of the resolution or the ballot. But we must base our judgment upon the existence, not the cause, of the fatal defect.

We agree with the finding of the trial court that the proposed all-purpose type of auditorium as determined upon by the Board of Trustees is within the authorization of the statute, and that appellant's contrary contention is without merit.

For the reasons before stated, it is our opinion that the election on the question of the proposed constitutional amendment was invalid, and that the trial judge was in error in not so holding.

Reversed.

STUKES, C. J., TAYLOR and OXNER, JJ., and T. B. GRENEKER, Acting Associate Justice, concur.