## 18534

M. S. STACKHOUSE, L. B. Hardaway, R. K. Wright, and Gilbert McNeil, Appellants, v. Laurens FLOYD, Gordon Lynn, Phil Brown, James K. Page, J. D. Ray, Jr., T. E. Finklea, and M. H. Cox, as Members of the County Board of Education of Dillon County, Mrs. Elma M. Moody, as Auditor and J. B. Cole, as Treasurer of Dillon County, South Carolina, Respondents.

(149 S. E. (2d) 437)

*Messrs. Willcox, Hardee, Houck, Palmer & O'Farrell,* of Florence, *for Appellants,*

*Messrs. W. B. Hawkins,* of Dillon, and *Sinkler, Gibbs & Simons,* of Charleston, *for Respondents,*

July 18, 1966.

PER CURIAM:

In this action plaintiffs-appellants, as freeholders and tax-payers of the County of Dillon, seek, on numerous grounds, to prevent Dillon County from issuing bonds for school purposes, authorized by Act No. 581 of the Acts of the General Assembly of South Carolina for 1965. The said Act was enacted following and pursuant to an amendment to Article X, Section 5 of the Constitution of South Carolina, which was proposed by joint resolution, approved February 26, 1964 (1964 Acts and Joint Resolutions, No. 1204, page 2767), and ratified by Act No. 25 of the Acts of the General Assembly on the 10th day of February, 1965.

We are satisfied that the decree of the circuit court, which will be reported herewith, soundly and correctly disposes of all questions raised by the appellants below and on this appeal.

The judgment of the lower court is, accordingly,

Affirmed.

Decree of Judge Spruill follows:

At issue here is the constitutionality of an Act enacted at the 1965 session of the General Assembly of the State of South Carolina authorizing the issuance of general obligation bonds by Dillon County whose proceeds are to be allocated among the school districts of Dillon County on the basis of pupil enrollment.

Dillon County is divided into three school districts: Lake View School District No. 1, Dillon School District No. 2, and Latta School District No. 3; and each of these school districts is subject to the eight per cent debt limitation imposed by Article X, Section 5 of the South Carolina Constitution. At the 1965 session of the General Assembly a special constitutional amendment was ratified providing that Dillon County may incur bonded indebtedness for school purposes in an amount not exceeding 15 per

cent of the assessed value of all taxable property in the County. A county and its school districts are separate entities and are separately subject to their respective constitutional debt limitations. *Tindall v. Byars,* 217 S. C. 1, 59 S. E. (2d) 337. The effect of the amendment was to provide for Dillon County itself a 15 per cent debt limitation in the case of bonds issued for school purposes, separate and distinct from the eight per cent debt limitation upon the respective school districts, and from the eight per cent county debt limitation for other purposes. *Knight v. Allen,* 234 S. C. 559, 109 S. E. (2d) 585.

Acting on the strength of this constitutional amendment, the General Assembly at its 1965 session enacted legislation bearing ratification number R-360, approved May 6, 1965, by which it undertook to empower Dillon County by the County Board of Education of Dillon County to issue general obligation bonds of Dillon County for school purposes up to the amount permitted by the said special constitutional amendment, and to allocate the proceeds from the sale of such bonds among the three school districts of Dillon County in proportion, to the nearest $1,000.00 that the pupil enrollment of each school district, as of the beginning of the 1964-65 school year, bears to the total pupil enrollment in Dillon County. This legislation further provided that the net proceeds of the bonds, after being allocated among the three school districts of Dillon County on the basis above mentioned, should be expended upon the warrant or order of "a majority of the trustees of the respective school districts, to provide for additional public school facilities for the three school districts of Dillon County * * *."

The plaintiffs are freeholders and taxpayers of Dillon School District No. 2 of Dillon County, South Carolina, and bring this action on behalf of themselves and all other persons in Dillon County similarly situate. The defendants include the members of the County Board of Education of Dillon County and the Auditor and Treasurer of Dillon

County. The plaintiffs attack the issue of the proposed bonds and the laying of a tax therefor upon a number of grounds as more fully set forth in their amended complaint and question both the validity of the constitutional amendment above mentioned, and the constitutionality of the 1965 legislaion authorizing the issuance of the bonds.

The defendants demurred on the grounds that it appears on the face of the amended complaint that it does not state facts sufficient to constitute a cause of action. The parties prepared and submitted to each other prior to the hearing on the demurrer, and to this Court at the time of the hearing, extensive briefs setting forth their respective positions.

This case is a vigorously contested adversary proceeding rather than a "test suit" instituted to determine the validity of the proposed bond issue, and the issues were fully argued before me on Friday, September 3, 1965.

The plaintiffs attack the validity of the Dillon County constitutional amendment. First, they contend that the quesion as proposed and ratified by the General Assembly varied materially from the question submitted to the voters at the 1964 general election and that, as a result of such variation, the amendment has not been validly adopted in accordance with the provisions of Article XVI of the South Carolina Constitution. Secondly, they contend that the election with regard to the amendment was fatally defective because of certain alleged irregularities including the failure to post the proposed amendment conspicuously at each voting precinct in Dillon County and in the other voting precincts within the State of South Carolina as required by Section 23-321 of the 1962 South Carolina Code of Laws.

The amendment was proposed, voted on and ratified in the following forms :

Proviso Proposed Amending the Constitution, Ratified February 26, 1964 :

Provided that Dillon County may incur bonded indebtedness for school purposes in an amount not exceeding 15%

of the assessed value of all taxable property in the county, and such indebtedness shall not be considered in determining the aggregate debt limitation imposed by this section. Proposed Amendment Submitted to Voters in General Election:

To permit Dillon County to incur bonded indebtedness for school purposes in an amount not exceeding 15% of the assessed value of all taxable property within the county, *and to exclude such indebtedness from limitation* of aggregate indebtedness upon territory in the county. (Emphasis added.)

Amendment of Article X, Section 5, Ratified February 10, 1965, provided:

[T]hat Dillon County may incur bonded indebtedness for school purposes in an amount not exceeding fifteen per cent of the assessed value of all taxable property in the county, and such indebtedness shall not be considered in determining the aggregate debt limitation imposed by this section.

The plaintiffs contend that the amendment, as proposed and ratified, authorized Dillon County to incur bonded indebtedness for school purposes in an amount not exceeding 15 per cent of the assessed value of all taxable property in the county and further provides that such indebtedness shall not be considered in determining the 15 per cent aggregate debt limitation imposed by Article X, Section 5, upon Dillon County itself; and the amendment, as voted upon, provides that bonds issued thereunder should be excluded from the 15 per cent aggregate debt limitation "upon any territory in the county."

The language of the amendment as set forth in the proposing and ratifying resolutions has exactly the same meaning as the language in the question submitted to and approved by the voters. Indeed, the question was submitted in the form prescribed by the General Assembly in the proposing resolution itself. Furthermore, there

would have been no need for the amendment to provide that indebtedness incurred thereunder should not be considered in determining the 15 per cent aggregate debt limitation imposed by Article X, Section 5, on Dillon County itself, because it has long been established that a county is not subject to the 15 per cent aggregate debt limitation. *Elliott v. Heyward*, 127 S. C. 468, 121 S. E. 257.

The meaning of the amendment both as proposed and as voted upon was clearly the same, to wit: that Dillon County school bonds issued pursuant thereto should not be taken into account in calculating the 15 per cent aggregate debt limitation applicable to any political subdivision within Dillon County. Otherwise the issuance of bonds to the extent permitted by the amendment could preclude the issuance of general obligation bonds by certain lesser political units of Dillon County.

There is no requirement that the amendment as set forth in the proposing resolution must appear on the ballot submitted to the voters. In the case of *Ex Parte Tipton*, 229 S. C. 471, 93 S. E. (2d) 640, the South Carolina Supreme Court held that the question on the ballot need not include the full text of the proposed amendment but that "it is sufficient that it describe the amendment plainly, fairly, and in such words that the average voter may understand its character and purpose." The question submitted here meets these requirements.

The plaintiffs contend that the failure to post the proposed amendment at each voting precinct as required by Section 23-321 of the 1962 South Carolina Code of Laws invalidated the election with regard to the amendment. The applicable principle is stated in 18 Am. Jur., Elections, Section 11, as follows:

In order to give effect to the will of the majority and to prevent the disfranchisement of legal voters, the courts uniformly have held to be formal and directory those provisions which are not essential to a fair election. Even provi-

sions of an election law which are viewed as mandatory, if enforcement is sought before election in a direct proceeding, will be held directory only in a proceeding after the election, unless an essential element of the election is affected or there is an express declaration in the statute that the act is essential to a valid election or that its omission will render the election void * * *.

The South Carolina Supreme Court in the case of *State ex rel. Parler v. Jennings,* 79 S. C. 414, 60 S. E. 967, expressed itself to be in accord with this principle and adopted language to the effect that the Courts should determine such an irregularity to be fatal only if it had "such a vital bearing on the proceedings as probably prevented a free and full expression of the popular will."

In the case of *Ex Parte Tipton, supra,* the question submitted on the ballot stated the proposed constitutional amendment in an erroneous and misleading fashion but it was contended that this defect was cured by the posting of the full proposed amendment in each voting place as required by Section 23-321. The Supreme Court rejected this contention with the following language:

We do not agree. It is the ballot, not the posted notice, with which the voter comes into direct contact. The reasonable assumption is that he reads the question proposed on the ballot, and that his vote is cast on consideration of the question as so worded.

I am satisfied that the failure to post the amendment, as alleged, would have no such vital bearing on the proceedings as probably prevented "a free and full expression of the popular will."

For the foregoing reasons, I am satisfied that the amendment here was properly adopted in accordance with the requirements of Article XVI of the South Carolina Constitution and, upon its ratification on February 10, 1965, became a part of the South Carolina Constitution.

Furthermore, it is clear that this method of attack is not open to the plaintiffs. Their remedy was to appeal first to the respective Boards of County Canvassers and then to the Board of State Canvassers. However, in the instant case the plaintiffs failed to pursue that remedy. Thus, the objections raised by the plaintiffs in this action with regard to the conduct of the election have already been concluded against them by the action of the County Boards and State Board of Canvassers from which no appeal was made. *State ex rel. Martin v. Moore,* 54 S. C. 556, 32 S. E. 700; *Redfearn v. Board of State Canvassers,* 234 S. C. 113, 107 S. E. (2d) 10.

Plaintiffs also allege certain other irregularities with regard to the conduct of the election. These irregularities, for the reasons set forth above, likewise do not invalidate the election.

The General Assembly under the provisions of Section 14-1761 *et seq.,* of the 1962 South Carolina Code of Laws has established a County Board of Commissioners composed of seven members to organize and conduct the administration and the business of Dillon County upon a systematic, economic and efficient basis. This is not unlike the situation existing in many other counties in this State where some form of County Board has been establshed by the General Assembly to carry out prescribed functions within the particular county involved. The Act authorizing the issuance of Dillon County school bonds in this case, rather · than empowering the County Board of Commissioners of Dillon County to issue the same, provides that they shall be issued by the County Board of Education of Dillon County as established by Article II of Chapter 33, Title 14, Code of Laws of South Carolina, 1962. This Act further provides that the net proceeds of the bond issue, after being allocated among the three school districts on the basis above mentioned, shall be expended "upon the warrant or order of a majority of the trustees of the respective school dis-

tricts, to provide for additional public school facilities for the three school districts of Dillon County * * *." Plaintiffs contend that this legislation is unconstitutional in that (a) the County Board of Education of Dillon County is empowered to issue the bonds and (b) the trustees of the respective school districts are authorized to disburse the proceeds thereof; rather than in each instance the County Board of Commissioners of Dillon County.

Plaintiffs base their argument upon the language of the amendment which provides that "Dillon County" may incur bonded indebtedness for school purposes in an amount not exceeding 15 per cent of the assessed value of all taxable property therein. The plaintiffs contend that inasmuch as the County Board of Commissioners was the duly constituted county authority at the time the amendment was proposed, voted upon and ratified, the authorization granted therein must therefore relate exclusively to such County Board of Commissioners.

The General Assembly is empowered under Article X, Section 5 to vest "the corporate authorities of counties * * *" with power to assess and collect taxes for corporate purposes. It has been well established since the 1915 decision of *Lillard v. Melton*, 103 S. C. 10, 87 S. E. 421, that the corporate authority of a county for the purpose of issuing bonds is "that person, board, or commissioner, whatever may be the form, * * * who is empowered by the legislative will to act in the premises." The opinion in the *Lillard case* points out that one act of the General Assembly is no more potent than another and if the General Assembly could abolish a Board of County Commissioners and transfer its duties and powers to another body, then it certainly would have the authority in the absence of any constitutional inhibition, to vest such other body with the right to issue county bonds; in which instance it acts merely as the agent of the General Assembly to accomplish the issuance of the bonds.

The plaintiffs argue, however, that the language of ▪ the amendment here takes Dillon County out of the general rule because the amendment by necessary implication authorized issuance of bonds thereunder only by the county authority existing at the time of its adoption, to wit: the County Board of Commissioners of Dillon County established by Section 14-1761 of the 1962 South Carolina Code of Laws. ·

The language of the amendment here justifies no such interpretation. The South Carolina Constitution of 1868 provided for a constitutional form of county government. However, this form of county government was purposely omitted from the 1895 Constitution and the counties were left to the control of the General Assembly. An interesting account of the background of these developments is set forth in the case of *Gaud v. Walker,* 214 S. C. 451, 53 S. E. (2d) 316. The amendment here must be considered in the light of the section amended, *Knight v. Hollings,* 242 S. C. 1, 129 S. E. (2d) 746, in order to establish its intent; and Article X, Section 5 does not relate to the creation or establishment of a form of county government, but rather to the debt limitation imposed upon the various political subdivisions of the state, including counties. This section has been amended on numerous occasions and many of these amendments relate to designated subdivisions such as a named school district or county. It has never been contended that the effect of any such amendment was to establish or perpetuate any particular form of county government which may have been existing at the time the amendment was adopted. On the contrary it has recently been established in the case of *Miller v. Farr,* 243 S. C. 342, 133 S. E. (2d) 838, that the General Assembly can, in effect, repeal an amendment which relates to the debt limitation of a particular school district by merely extinguishing that school district through a consolidation.

The purpose of the amendment here, as clearly and expressly stated therein, is to provide an additional debt limitation for Dillon County when it issues bonds for school purposes. The "Dillon County" referred to relates to a geographical area of the state whose affairs are subject to the plenary powers of the General Assembly. These plenary powers are in no fashion restricted or limited by this amendment, either expressly or by implication.

Thus, under the authority of the *Lillard case* and in line with the practice long established in this State, the General Assembly can empower the County Board of Education of Dillon County to issue general obligation bonds of Dillon County and can validly authorize the expenditure of the bond proceeds by the Trustees of the respective school districts in the manner and for the purposes prescribed by the General Assembly. In each instance, County Boards of Education and the respective Boards of Trustees act as agents of the General Assembly within well defined limits. *Evans v. Beattie,* 137 S. C. 496, 135 S. E. 538. *McLure v. McElroy,* 211 S. C. 106, 44 S. E. (2d) 101.

Plaintiffs also contend that the Act is unconstitutional in that it delegates to the Auditor the authority to tax and the discretion to fix the amount of the tax to be levied to provide debt service on the bonds. The Act, however, gives no such discretionary power to the Auditor but rather compels him to levy annually "a tax sufficient to pay the principal and interest of the bonds as they respectively mature and to create such sinking fund as may be necessary therefor." The amount of the levy, therefore, is established by the maturity schedule of the bonds and the interest rate. The Auditor acts in a ministerial fashion as the agent of the General Assembly in this matter. *Evans v. Beattie, supra; McLure v. McElroy, supra.*

The final objection raised by the plaintiffs concerns the basis upon which the bond proceeds are to be allocated among the several school districts of Dillon

County. The General Assembly prescribed that the proceeds should be allocated "in the proportion, to the nearest $1,-000. that the pupil enrollment of each school district, as of the beginning of the 1964-65 school years bears to the total pupil enrollment in Dillon County." The plaintiffs contend, and the defendants admit for the purpose of the demurrer, that inequities in facilities exist among the school districts, that the needs of the several school districts are not in proportion to the respective per pupil enrollments and that the per pupil enrollments of the respective school districts are not in the same proportion as the assessed values of the respective school districts. This is an interesting question.

The plaintiffs rely on the case of *Moseley v. Welch,* 209 S. C. 19, 39 S. E. (2d) 133, which involved an attempt to issue Williamsburg County bonds to refund the outstanding bonded indebtedness of some of the county's several school districts. In that instance, the proposed bond issue was contested by a resident and taxpayer of a school district which had no outstanding bonded debt, who contended that the result of the proposed plan would be to require him to pay taxes to be used in discharging the bonded indebtedness of other school districts which would nevertheless continue to own their respective properties.

In the *Moseley case* the Supreme Court held that the plan constituted a denial of due process and of the equal protection of the laws to the citizens and taxpayers of debt free school districts in that it would require them to help pay for facilities located in other school districts but in which they would acquire no legal interest whatsoever.

The Moseley decision, however, deals with a plan whereby county bonds would be issued to refund outstanding bonds of the several school districts within the county and it must be confined to that situation. Here, on the other hand, we are faced with a situation involving the issuance of county bonds to provide additional school facilities for the several school districts of the county. The Moseley de-

cision itself indicates that such a procedure is proper with the following language:

It may be conceded that the State or a county can lawfully give building aid to a school district. In fact, such has been done * * * and the practice of doing so has never been legally questioned.

A county-wide tax to be apportioned among the several school districts on the basis of enrollment was provided for in Article XI, Section 6 of the 1895 South Carolina Constitution. Certainly among the many school districts of the State which enjoyed the benefit of this tax while it was in effect, inequities existed both as to need and as to the ratio of assessed value to pupil enrollment.

In the case of *Shelor v. Pace,* 151 S. C. 99, 148 S. E. 726, an attack was made on the constitutionality of an act providing for the issuance of county bonds by Oconee County whose proceeds would be used to fund a debt incurred to pay teachers' salaries throughout the several school districts of Oconee County. The constitutionality of this act was sustained and it is significant to the instant case that the apportionment of the bond proceeds in the *Shelor case,* being based ultimately on per pupil enrollment, is substantially the same as the basis for the apportionment prescribed in the Act here.

It has long been the policy in South Carolina, not only on a county-wide basis but also on a State-wide basis, "to tax the wealth where it is, in order to educate the child where he is." This principle originally set forth in Article XI, Section 6 of the 1895 Constitution was again applied in 1924 with the enactment of the 6-0-1 law. It is currently applied in the distribution of the State sales and use tax which is allocated by the State among the several school districts of the State on the basis of pupil enrollment of the respective school districts. The legislation providing for the sales and use tax was vigorously attacked on numerous grounds and was sustained by the South Caro-

lina Supreme Court in *State ex rel. Roddey v. Byrnes*, 219 S. C. 485, 66 S. E. (2d) 33. No question was raised as to the method of allocating State funds among the respective school districts of the State which is a clear indication that both the able attorneys involved and the Court recognized the method to be entirely proper. If the equal protection and due process clauses of the State and Federal Constitutions do not prohibit the State from allocating funds collected on a State-wide basis among the several school districts of the State on the basis of enrollment, that is a strong argument that these same constitutional provisions do not prohibit the distribution of funds collected from a county-wide tax levy among the several school districts of that county on the basis of per pupil enrollment.

The plaintiffs have not cited any authority other than the Moseley decision to sustain their position here. The general law, as set forth in 47 Am. Jur. Schools, Section 90, prohibits the distribution of school funds by a legislature on an arbitrary basis and states that such funds must be distributed "on some just basis relating either to the scholastic population or the general population of each locality, or the amount of taxes paid, or some such equal and uniform basis." This section further states that the mere fact that tax monies are apportioned so that some school districts receive less than the amount of the levy therein has been held not to constitute a lack of uniformity where the taxes were apportioned reasonably and in accordance to need in an effort to equalize educational standards throughout the State.

It would be difficult to arrive at a more just basis for apportionment than the basis provided here. Inequities may result, but that is not in itself fatal because, while equality may be the aim of the law, it is a goal which is seldom in fact achieved; and this is true no less in the case of the expenditure of public monies.

The important consideration is whether these funds are being obtained and expended in a manner not prohibited

by the State and Federal Constitutions. In the instant case Article X, Section 6 expressly permits a county to levy a tax and issue bonds for educational purposes. *Grey v. Vaigneur,* 243 S. C. 604, 135 S. E. (2d) 229. Many counties today impose a county-wide equalization levy on the entire county for the purpose of assisting the poorer school districts, and this practice has never been contested. Both the *Shelor case* and the *Mosley case* are authority for the proposition that a county may give assistance to a school district from a county-wide tax levy and/or by the issuance of county bonds.

With regard to the plaintiffs' contention that the needs of the respective school districts are not in the same proportion that the bond proceeds are to be allocated, the legislation here provides that these funds, once allocated, shall be expended for the purpose of providing additional public school facilities in the several school districts. The legislation further provides that, after the county's building program is completed, any balance remaining in the bond account shall be used to effect the retirement of these bonds. There is no requirement that the school districts must use all of the funds allocated to them and it must be presumed at this point that the public officials involved will lawfully exercise the discretion vested in them by the General Assembly. Thus, if a particular school district completes its program and a balance remains to its credit, the balance would be used to retire outstanding bonds. The General Assembly thus has provided for a case where monies are allocated in excess of need.

On the basis of the foregoing, I am satisfied that the method of apportionment provided by the legislature is not prohibited by any provision of the State or Federal Constitution but is on a basis well established in practice in this State and supported by the authorities cited above.

I have carefully considered all of the objections urged by the plaintiffs as to the constitutionality of the Act involved here and find that there is no merit in any of these objec-

tions but that the defendants can legally proceed in the manner prescribed by the Act to issue the bonds authorized thereby, whose proceeds will be allocated and expended in the manner prescribed therein. Accordingly, the defendants' demurrer is sustained, and

It is so ordered.