13753

ANSEL v. MEANS, SUPERVISOR, *ET AL.*

(172 S. E., 434)

*Messrs. D. B. Leatherwood* and *W. B. McGowan,* for plaintiff,

*Mr. Henry K. Townes,* for defendants,

January 22, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

At the session of the General Assembly held in 1920, an Act, No. 414 (31 St. at Large, p. 791), was passed providing for the establishing of a County Court for Greenville County. By the terms of the Act it was provided that the question of establishing the Court should be submitted to the qualified electors of Greenville at the next general

election for State and county officers. It was further provided that, if a majority of the qualified electors voted in the affirmative of such question, the Court should be established, and the Act provided the machinery for the conduct of the Court. The election was held in November, 1920, and was in favor of establishing the Court.

The plaintiff was elected Judge of the Court, and still is the occupant of that office.

At the session of the General Assembly of 1932, an Act was passed which referred to the voters in the Democratic primary election to be held in August, 1932 (37 St. at Large, p. 1114), the question of abolishing the County Court. At this election a small majority voted in favor of abolishing the Court.

The General Assembly at its session of 1933 passed an Act which repealed the provisions of the Code which established the Court, the Act to become effective January 1, 1934 (38 St. at Large, p. 517).

This proceeding is brought in the original jurisdiction of this Court to test the constitutionality of the Act of 1933 which seeks to abolish the County Court.

Two main questions are presented:

(1) Was the question of abolishing the County Court properly submitted to the voters at the primary election? In other words, if the expression of the will of the voters on this question was a condition precedent to action by the General Assembly, was the will of the voters as expressed at a primary election a compliance with the constitutional requirements?

(2) Is the legislature vested with power to abolish the Court without referring the matter to the qualified voters of the county?

*"Judicial Power Vested in Certain Courts.*—The judicial power of this State shall be vested in a Supreme Court, in two Circuit Courts, to wit: A Court of Common Pleas

having civil jurisdiction and a Court of General Sessions with criminal jurisdiction only. The General Assembly may also establish County Courts, Municipal Courts and such Courts in any or all of the counties of this State inferior to Circuit Courts as may be deemed necessary, but none of such Courts shall ever be invested with jurisdiction to try cases of murder, manslaughter, rape or attempt to rape, arson, common law burglary, bribery or perjury: Provided, Before a County Court shall be established in any county it must be submitted to the qualified electors and a majority of those voting must vote for its establishment." Article 5, § 1. Constitution.

· These conditions were all complied with in establishing the Court. The legislature sought to ascertain the will of the people of the county by referring the question of abolishing the Court to the voters at a Democratic primary election for the nomination of State and county officers. If it was necessary to refer the question to the voters, was this reference a compliance with the law?

This question is answered in the negative by the opinion of this Court in the case of *Dial v. Watts*, 138 S. C., 468, 136 S. E., 891. That was a proceeding in the original jurisdiction of this Court to test the validity of a certain proposed issue of bonds of Laurens County.

An Act of the General Assembly provided for the issuing of the bonds if a majority of the voters at an election to be held under the rules governing the Democratic primary were in favor of it. At such election the majority of the votes cast were in favor of the issuance of the bonds. The action in the original jurisdiction of this Court challenged the power of the commissioners to issue the bonds on the ground that the election, as it was held, did not comply with the provision of the Constitution to the effect that, before the legislature may authorize counties to issue bonds, the question must be submitted to the qualified electors of the county.

This Court said: "A debt should not be created upon the county without the consent of the qualified electors as provided by Article 2 of the State Constitution, and the Acts of the legislature passed in pursuance thereof. The vote of a Democratic primary in this instance was null and void, and the bonds, if issued, will be null and void, being in violation of Article 2 of the State Constitution, §§ 3, 11, and Volume 3 of the Code, §§ 233, 241, requiring the production of registration certificates and tax receipts at all general and special elections." 138 S. C., 468, 136 S. E., 891, 892.

It is admitted that registration certificates and tax receipts were not required of voters at the Democratic primary of 1932 who voted upon the question of abolishing the County Court of Greenville County.

It is manifest that the election was invalid to confer upon the legislature the power to abolish the Court.

Did the legislature possess such power irrespective of the expression of the will of the voters as expressed at any election?

It is argued on the one hand that there is no express provision of the Constitution which requires that the question of abolishing a County Court be submitted to the qualified electors; and, on the other hand, it is argued that there is no express provision of the Constitution which gives to the legislature the power, of its own motion, to abolish a Court which has been established by the authority of the Constitution of the State.

The question of the wisdom of retaining or abolishing the County Court is not here involved. If the legislature has the power to abolish it, then it is left to its discretion to say whether it should be abolished.

In support of the power of the legislature in the premises, the argument is advanced that Article 5 of the Constitution determines the limitations of County Court, and the legisla-

ture may limit its jurisdiction, and by limiting it to the trial of only a certain class of cases may render it of no practical use, or may abolish it by depriving it of all jurisdiction. The argument is fallacious. The law will not countenance the doing by indirection what may not be done directly. The very authority which is quoted by defendants' counsel from 12 C. J., § 260, refutes his argument, *viz.:* "An Act abridging the jurisdiction of a Court is valid to the extent that it does not infringe on the inherent powers of the Court, nor violate any provisions of the Constitution."

Such action as is suggested by the argument would manifestly be unconstitutional.

It is further argued for defendants that, because the legislature may abolish the Court of Probate, it may abolish a County Court. The argument loses sight of the fact that a Probate Court is not a constitutional Court, except in the County of Charleston, whereas the County Court is one established under the provisions of the Constitution. The very case cited by defendants, *Bradford v. Richardson,* 111 S. C., 205, 97 S. E., 58, 60, recognizes this distinction.

Mr. Justice Hydrick said in that case: "The second ground of attack is based upon two erroneous assumptions: First, that the Probate Court is a constitutional Court, whose jurisdiction is specified and limited by the Constitution, so that, by *implication, the legislature is denied the power to extend it;* and, second, that the duty imposed upon the Probate Judge extends the jurisdiction of his Court, so as to include a subject-matter not specified in the Constitution." (Italics added.)

Since the legislature was empowered by the Constitution to create inferior Courts and define their powers and duties and jurisdiction, it logically follows that the legislature may abolish such Courts. But nowhere is the legislature given power to abolish a Court created by the Constitution or by its express authority.

The important matter demanding consideration is this: How should Article 5 of the Constitution be construed touching the power to abolish a County Court which has been established in the manner which the Constitution has prescribed?

In the case of *Commonwealth v. Leach,* the Supreme Judicial Court, of Massachusetts in an opinion reported in 246 Mass., 464; 141 N. E., page 301, 302, was considering a statute which regulated the duties of the Judges of certain of the Courts of the commonwealth. The validity and constitutionality of the Act was attacked. The Court said: "The only Court established by the Constitution is the Supreme Judicial Court."

It was further held that the legislature had power to regulate the civil and criminal jurisdiction of all the other Courts of the commonwealth, which were created by statutes, but the legislature could not interfere with the powers and jurisdiction of the Supreme Judicial Court, a Court created by the Constitution.

It is the fundamental principle of all rules governing the construction of written instruments that the intent of the makers of the instrument shall be ascertained and shall control. Authorities are not needed to be cited in support of this acknowledged postulate.

"The pole star in the construction of Constitutions, as well as other written instruments, is the intention of the makers and adopters." *Hockett v. State Liquor Licensing Board,* 91 Ohio St., 176, 110 N. E., 485, 486, L. R. A., 1917B, 7.

"It would not be practicable, if possible, in a written constitution to specify in detail all of its objects and purposes, or the means by which they are to be carried into effect. Such prolixity in a code designed as a frame of government has never been considered necessary or desirable; therefore constitutional powers are often granted or restrained in general terms from which implied powers or restraints neces-

sarily arise. The implied powers and restrictions in consti-. tutional provisions are therefore a very important element to be considered. It is an established rule of construction that, when a constitution confers a power or enjoins a duty it also confers, by implication, all powers that are necessary for the exercise of the one, or for the performance of the other. And likewise the legislature may be restrained from the exercise of power as well by implication of the language of the Constitution as by express prohibition. Every positive direction in a Constitution contains an implication against anything contrary to it, or which would frustrate or disappoint the purpose of that provision." 12 *Corpus Juris,* 719, § 73. This announced principle is fortified by many authorities from federal and state reports. In note F of the same book this is found: "In construing either the Federal or State Constitutions it is regarded as a safe rule 'to look to the nature and objects of the particular powers, duties and rights with all the lights and aids of contemporary history, and to give to the words of each just operation and force consistent with their legitimate meaning as may fairly secure and attain the ends proposed.' " Supported by the citation of many authorities.

In the case of *Bradford v. Richardson,* 111 S. C., 205, 97 S. E., 58, 61, this Court said: "This 'exhaustive grant' doctrine, excluding, by implication, the power of legislation, is not favored. *Implied limitations of legislative power are only admissible when the implication is necessary, as where language, conveying a particular intent, cannot have its proper force without such implication."*

We think the language of Article 5 of the Constitution relating to County Courts falls within the rule thus laid down. The provision is that a County Court may not be established until a majority of the qualified electors of the county have approved it by their votes cast at a general election. Is it conceivable that the framers of the Constitution

ever intended that the Court, established with such meticulous care to ascertain the will of the qualified voters of the county interested, may be destroyed by an Act of the legislature without its having ascertained the will of the qualified electors whose assent created it? If the framers of the Constitution intended to leave their constitutional offspring, whose birth they had guarded with such minute care, to be overthrown by an Act of the legislative branch of the government, they would have left the creation of such Courts to the will of that body.

It is manifest that the General Assembly, which passed the Act of 1932, were of the opinion that it was necessary to have an expression of the will of the voters of Greenville County on the question of abolishing the County Court, and it is patent that the Act of 1933, which repealed the sections of the Code which provided for the creation of the Court, was predicated upon the result of the vote at the Democratic primary election of 1932 to which the legislature had referred the question. We have seen that that election conferred no power on the legislature to pass the repealing Act of 1933. And we have reached the conclusion that the legislature had no power to abolish the County Court of Greenville without submitting the question to the qualified electors of that county at a general election held for the purpose of electing State and county officers.

The repealing Act of 1933 is invalid, null, and void. It follows that plaintiff is entitled to the relief prayed for.

The judgment of the Court is that the defendants be, and they are hereby, enjoined and restrained from enforcing and putting into effect, or attempting to enforce and put into effect, the Act of the General Assembly of South Carolina, No. 372, approved May 16, 1933 (38 St. at Large, p. 517), which attempts to repeal the sections of Article 3, Vol. 1, Code of Laws of South Carolina 1932, set out by

numbers in the said Act, and which relate to the County Court of Greenville County.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER concur.