17548

H. Paul KNIGHT, Appellant, v. J. Ed ALLEN, County Supervisor, and J. Rufus Craig, Joe A. Adkins, Malcolm G. Rogers, Sam Clinton and William T. Sherer, Jr., together constituting the County Board of Directors of York County, Respondents.

(109 S. E. (2d) 585)

*Nolen L. Brunson,* Esq., of Rock Hill, *for Appellant,* ▮

*Messrs. John M. Spratt,* of York, and *Huger Sinkler,* of Charleston, for Respondents,

June 29, 1959.

STUKES, Chief Justice.

This is an appeal from a judgment refusing an injunction against the proposed issuance of $1,000,000.00 general obligation bonds of York County pursuant to an act of the General Assembly, approved March 25, 1959, entitled, "An Act to empower the County Supervisor and the County Board of Directors of York County to issue not exceeding one million dollars of general obligation bonds of York County to provide further hospital facilities in said County if the election herein required shall result favorably, to prescribe the conditions under which said bonds shall be issued and to make provision for their payment."

The county was, of course, subject to the bonded debt limitation of eight per cent of the assessed value of the taxable property therein which is contained in Article X, Section 5, of the Constitution of 1895. However, that section was amended in 1927 with respect to York County by the addition of the following, which is found at page 285 of Volume 7 of the Code of 1952:

"Provided, That the limitation herein provided as to the amount of bonded debt of any county shall not apply to the County of York, when the proceeds of such bonds are to be used for highway and bridge construction, in which case it shall never exceed eighteen per cent of the assessed value of all taxable property in said county."

The present bonded debt status of the county is disclosed by the following which is taken from the record for appeal:

The assessed value of all taxable property in the County is $27,909,181.00.

Eight per cent of that figure is approximately $2,232,-000.00.

Eighteen per cent is approximately $5,022,000.00.

The aggregate bonded debt (exclusive of sinking funds) is $3,930,000.00.

The bonded debt incurred for the purposes of highway and bridge construction is $2,955,000.00.

The bonded debt incurred for other purposes is $975,-000.00.

If the $1,000,000.00 of bonds authorized for hospital purposes are issued, the aggregate bonded debt for all purposes will be $4,930,000.00.

Under such conditions, the bonded debt for purposes other than highway and bridge construction will be $1,975,000.00, which is less than eight per cent of the assessed value of the taxable property.

The contention of appellant is that the bonded debt of the County can never exceed the original eight per cent as provided in Article X, Section 5, before amendment, unless such bonded debt be incurred for highway and bridge construction. The lower court was, and we are, of the opinion that such was not the intention of the constitutional amendment: but that it was intended that bonds for highway and bridge construction might be issued within the eighteen per cent limit, without impairment of the right to issue bonds for other county purposes to the original limitation of eight per cent. Surely any contrary intention would have been expressed.

All of the many amendments to this section of the constitution have been for the purpose of enlarging, not reducing, the original debt limits and it would be unreasonable to assume that it was intended by the York amendment to deprive

the county to any extent of its original limit of eight per cent for purposes other than highways and bridges. Our conclusion is that the constitution, as amended, provides two bonded debt limitations for York County—one of eight per cent for any proper county purpose, and another of eighteen per cent when the bonds are for highway and bridge construction. The eighteen per cent was an added limitation for its specified purposes, and not substituted for the existing eight per cent limitation. Compare *Smith v. Littlejohn,* 151 S. C. 137, 148 S. E. 719.

Supporting analogy for the foregoing construction is found in the effect which has been given by this court to the general amendment of 1911, which is appended to Sec. 7 of Article VIII and found at page 223 of Volume 7 of the Code of 1952, as follows:

"Provided, further, That the limitation imposed by this Section, and by Section 5, of Article X, of this Constitution shall not apply to the bonded indebtedness in and by any municipal corporation when the proceeds of said bonds are applied solely and exclusively for the purchase, establishment and maintenance of a waterworks plant, or sewerage system, or lighting plant, and when the question of incurring such indebtedness is submitted to the freeholders and qualified voters of such municipality, as provided in the Constitution, upon the question of other bonded indebtedness."

It was held in the following cases that water, etc., bonds which were issued pursuant to this amendment should not be counted in determining the original constitutional limitations: *Bethea v. Town of Dillon,* 91 S. C. 413, 74 S. E. 983; *Lillard v. Melton,* 103 S. C. 10, 87 S. E. 421; and *Beacham v. City of Greenville,* 104 S. C. 421, 89 S. E. 401, 402. We quote from the opinion in the last cited case which also involved a hospital bond issue, as here:

"It cannot be questioned that under the Amendment of 1911 the sewerage bonds must be excluded in the calculation of the bonded debt of the city of Greenville, so that the only outstanding bonds of the city that are to be considered

in determining the validity of the proposed issue are the $475,000.00 issued for street improvements and the $183,-500.00, issued for other purposes, and under the Amendment of 1905 the street improvement bonds also must be excluded in ascertaining whether the proposed issue would exceed the 8 per cent. limitation."

So, here the highway and bridge bonds which are outstanding are not to be considered in determining whether the proposed issue of hospital bonds will result in the county's bonded indebtedness exceeding the eight per cent limitation of the original constitution.

Like result was reached with respect to an amendment to the constitution which affected the City of Columbia in *Seegers v. Gibbes,* 72 S. C. 532, 52 S. E. 586. That case was quoted and followed in *Davis v. Town of Saluda,* 147 S. C. 498, 145 S. E. 412, which relied upon the general amendment of 1911, *supra,* and also a special amendment relating to the towns of Saluda and Kingstree which was ratified in 1921.

Affirmed.

TAYLOR, OXNER, LEGGE and MOSS, JJ., concur.