17632

S. C. JOHNSON, Appellant, v. Furman E. THOMASON, as County Supervisor of Laurens County, Paul S. O'Dell and George Penland, as members of the County Board of Commissioners of Laurens County, and Allen D. Coleman, as County Treasurer of Laurens County, Respondents.

(113 S. E. (2d) 417)

*M. W. Abercrombie, Esq.,* of Laurens, *for Appellant,*

*Messrs. Thomas A. Babb,* of Laurens, and *Huger Sink-ler* and *Albert Simons, Jr.,* of Charleston, *for Respondents,*

March 29, 1960.

LEGGE, Justice.

Act No. 462 of the 1959 Acts of the General Assembly (LI Stat. at L. 1074, Act May 18, 1959) purports to authorize the issuance by Laurens County of general obligation bonds in an amount not to exceed one hundred thousand dollars and requires that the proceeds of their sale be used for making permanent improvements to county roads, the county jail, and the courthouse. Plaintiff in this action seeks a judgment declaring it unconstitutional because it makes no provision for the holding of an election, which he contends is required by the 1921 amendment of Article X, Section 5 of the Constitution, relating to the bonded indebtedness of Laurens County. That amendment reads as follows:

"Provided, further, That the limitations imposed by this section shall not apply to Laurens county, such county being hereby expressly authorized to vote bonds to an amount not exceeding twenty per cent of the value of all taxable property within the limits of Laurens county as valued for taxation by the State; the proceeds of such bonds to be applied to the construction or maintenance of roads, bridges and public buildings within said county: Provided, further, That this limitation shall not be construed to affect or limit power of other political divisions or municipal corporations covering or extending over the territory of Laurens county or portions thereof, possessing a power to levy a tax, or contract a

debt as now provided by law, or as may hereafter be provided by law." 31 St. at Large, p. 1730.

The circuit decree, concluding that such was the intent of the Joint Resolution of March 12, 1920, proposing submission of the amendment to the qualified electors, construed the word "vote" as meaning "issue", and held the act valid. It based this conclusion upon the following considerations:

1. The Constitution, while forbidding increase of the public debt of the State, other than for ordinary and current business, without submission of the question to the qualified electors of the State, Article X, Section 11, and forbidding the creation of a bonded debt by a city or town without submission of the question to its qualified electors, Article VIII, Section 7, contains no such restriction on the power of the legislature to authorize the issuance of bonds by a county. *Carrison v. Kershaw County*, 83 S. C. 88, 64 S. E. 1018; *Lillard v. Melton*, 103 S. C. 10, 87 S. E. 421.

2. There is lack of uniformity in the language of the amendments, ninety-four in number, to Article X, Section 5, adopted during the period 1921-1959. After the usual statement declaring that as to the particular bonds authorized the limitations imposed by that section shall not apply, it is declared in most of them that the county or other particular unit "may issue its bonds", or "may incur bonded indebtedness", and, in sixteen instances, that it "may vote bonds".

3. Generally the amendments to Article X, Section 5, provide that the question of incurring such indebtedness shall be submitted to the qualified electors of the unit concerned; and so it is declared in fifteen of the sixteen amendments where the words "may vote bonds" are used. Only in the amendment here involved is it not so declared in precise language.

4. The Joint Resolution proposing the amendment here involved was one of four introduced by the Laurens County delegation on the same day, as follows:

(a) One related to bonds of the City of Laurens, and is of no significance here. (XXXI Stat. at L. 1710; Code, Vol. 7, p. 226.)

(b) One related to bonds of the school district of the Town of Laurens (XXXI Stat. at L. 1731; Code, Vol. 7, p. 277). It authorized that district "to *vote* bonds to an amount not exceeding twelve per centum of the value of all taxable property * * * where the question of incurring such indebtedness is submitted to the qualified electors of said school district * * *." (Italics ours.)

(c) One related to bonds of School District Hunter No. 5 of Laurens County. (XXXI Stat. at L. 1729; Code, Vol. 7, p. 277). It authorized that district "to *issue* bonds in an amount not to exceed twelve (12) per cent of the value of all taxable property * * * where the question of incurring such indebtedness is submitted to the qualified electors of said school district. * * *." (Italics ours.)

(d) The one here involved, relating to bonds of Laurens County (XXXI Stat. at L. 1730; Code, Vol. 7, p. 277), we have hereinbefore quoted. It does not expressly declare that the question of incurring such indebtedness must be submitted to the qualified electors of the county.

Respondents, urging affirmance of the circuit decree for the reasons before mentioned, argue also that since the amendment does not expressly require an election, and authorizes only the county to "vote" the bonds, the word "vote" must be construed as meaning "issue", and that to hold otherwise this court must write into the amendment a designation of those who are to vote upon the question of issuing the bonds. This view is not without logic, but it must yield to the contrary decision of this court in *Dial v. Watts,* 138 S. C. 468, 136 S. E. 891.

The issue involved in *Dial v. Watts* was the validity of an Act of the legislature approved March 23, 1926 (XXXIV Stat. at L. 1594), which purported to authorize the issuance and sale by the County Board of Commissioners of Laurens

County of general obligation bonds of that county, the proceeds of which were to be used for permanent improvement of roads. Section 6 of that Act provided that the bonds should not be issued "unless the same shall have been approved by a majority of the voters in Laurens County in an election to be held under the rules and regulations governing the Democratic primaries in this State, at the same time and places that the primary election for State and County officers are held in 1926." This court, holding the Act unconstitutional, declared among other things that its requirement of an election necessitated the vote of the qualified electors of the county and was not satisfied by the vote of the Democratic primary.

As respondents point out, it cannot with certainty be said that the decision in *Dial v. Watts* construed the amendment to Article X, Section 5, with which we are here concerned, as requiring an election as a condition precedent to the issuance of the bonds there in question. But it is apparent, upon the face of the Act authorizing their issuance, that the legislature considered an election of some sort necessary. If such had not been the case, the Act would not likely have required one.

And it is quite evident, from legislation immediately following the ratification of the amendment (February 16, 1921, XXXII Stat. at L. 47), that the legislature so interpreted it. On March 7, 1921, there were approved three Acts relating to the issuance of bonds of Laurens County, as follows:

1. Act No. 354 (XXXII Stat. at L. 677) authorized the issuance and sale of $30,000.00 of bonds, their proceeds to be used "for permanent road improvement on road from the town of Clinton to Musgrove Mill." It expressly provided that "the question of issuing said bonds be submitted to the qualified electors of said county at an election to be held on the first Tuesday in April, 1921."

2. Act No. 355 (XXXII Stat. at L. 679) authorized the issuance and sale of $50,000.00 of bonds, their proceeds to

be used "for completion of existing contracts on roads from Clinton to Laurens and Laurens to Owings, and for building concrete bridge on South Raburn Creek, on Princeton Road." It contained no provision for an election, and none was necessary if the purpose of the bonds was to pay valid obligations theretofore contracted. The quoted language clearly shows that such was the case so far as the road contracts were concerned, and it does not require a different conclusion with regard to the obligation for the building of the bridge.

3. Act No. 356 (XXXII Stat. at L. 681) authorized the issuance and sale of $30,000.00 of bonds, their proceeds to be used "for permanent road improvement on road from Owings Station to Fountain Inn." It expressly provided that "the question of issuing said bonds be submitted to the qualified electors of said county at an election to be held on the first Tuesday in April, 1921."

We are not unmindful of the fundamental rule that every presumption should be indulged in favor of the constitutionality of a statute. *Dean v. Timmerman*, 234 S. C. 35, 106 S. E. (2d) 665; *Mullis v. Celanese Corp. of America, Celriver Division*, 234 S. C. 380, 108 S. E. (2d) 547. We recognize, too, that contemporary legislative interpretation of an ambiguous constitutional provision, though not binding upon the courts, is entitled to great respect. *State ex rel. Barber v. Parler*, 52 S. C. 207, 29 S. E. 651; *Edwards v. State Educational Finance Commission*, 222 S. C. 433, 73 S. E. (2d) 456.

The provision in the 1921 amendment to Article X, Section 5, that the "county" may "vote bonds", is ambiguous. The legislature, by several enactments within three weeks of its ratification, evidently construed it as requiring an election on the question of the issuance of such bonds; and that interpretation was further evidenced by the language of the 1926 Act with which *Dial v. Watts* was concerned. The decision of this court in that case ap-

pears to have confirmed that construction of it. Against that background we view the 1921 amendment as requiring the vote of the qualified electors of Laurens County on the question of the issuance of the bonds proposed to be issued under the Act here questioned; and we conclude that absence of provision for such election renders the Act invalid.

Reversed.

STUKES, C. J., and TAYLOR, OXNER and MOSS, JJ., concur.