18027

John Henry KNIGHT, Respondent, v. Ernest F. HOLLINGS, Governor of the State of South Carolina, Jeff B. Bates, Treasurer of the State of South Carolina, South Carolina State Highway Department, B. E. Myers, *et al.,* Board of Directors of Dorchester County, and Marvin R. Chinners, Road Supervisor of Dorchester County, Appellants.

(129 S. E.(2d) 746)

2

*Messrs. Daniel R. McLeod, Attorney General, James S. Verner* and *William L. Pope, Assistant Attorneys General,* of Columbia, *for Appellants, Ernest F. Hollings, Governor of the State of South Carolina; Jeff B. Bates, Treasurer of the State of South Carolina; South Carolina State Highway Department,* and *Sidney B. Jones, Jr.,* of Summerville, and *Charlton B. Horger,* of Orangeburg, *for Appellants, Board of Directors of Dorchester County and Road Supervisor of Dorchester County,*

*Messrs. Edens & Hammer,* of Columbia, *for Respondent,*

February 12, 1963.

LEGGE, Acting Justice.

Act No. 1086 of 1962 (52 Stat. at L. 2648) provides as follows:

"Notwithstanding any provisions of law to the contrary, all roads designated for hard-surfacing in the State Highway Secondary Construction Program as provided for under the provisions of Act No. 855, Acts of 1958, as amended by Act No. 312, Acts of 1959, in Dorchester County in any fiscal year shall be selected from a list submitted during such year in writing by the Board of Directors of Dorchester County and the Road Supervisor of Dorchester County, or a majority thereof."

Respondent brought this action for the purpose of having this act declared unconstitutional as special legislation, prohibited under Article III, Section 34, Subdivision IX of the Constitution of 1895, which (following enumeration of certain subjects concerning which the General Assembly is forbidden to enact local or special laws) provides that "[i]n all other cases, where a general law can be made applicable, no special law shall be enacted." Appellants demurred upon the ground that the complaint failed to set forth facts constituting a cause of action, by reason of Article II of Amendments to the Constitution, which declares:

"The General Assembly of this State may enact local or special laws concerning the laying out, opening, altering or

4

working roads or highways, and concerning the providing for the age at which citizens shall be subject to road duty, and concerning drainage."

This appeal is from an order overruling the demurrer.

Appellants concede that the act here challenged is a special law where a general one (Code 1952, § 33-21 et seq., detailing the powers and duties of the State Highway Department) can be, and has been made applicable, and that it is therefore invalid unless Article II of the Amendments rescues it from the prohibition of Article III, Section 34, Subdivision IX.

The issue, then, is whether Article II of the Amendments should be construed as enabling special legislation whereby officials of a particular county may control the State Highway Department's allocation for hard-surfacing of roads of the State Highway System within that county. No categorical answer is to be found in the express language of the Article; and we may therefore, in seeking to ascertain its meaning, look to its historical background. For while a constitutional provision of doubtful import is not to be viewed solely in the light of conditions existing at the time of its adoption, being intended not to obstruct the progress of the state but rather to meet and be applied to new conditions and circumstances as they may arise, consideration of the history of the times in which it was framed and adopted, and of the object sought to be accomplished by it, is an appropriate inquiry in the judicial effort to determine the intent of its framers and of the people who adopted it. *Reese v. Talbert,* 237 S. C. 356, 117 S. E. (2d) 375: *City of Cleveland v. Board of Tax Appeals* (Ohio 1950), 153 Ohio St. 97, 91 N. E. (2d) 480, 16 A. L. R. (2d) 1354.

Also applicable to our problem here is the fundamental rule that all sections of the Constitution must be considered together and harmonized if possible. *Gaud v. Walker,* 214 S. C. 451, 53 S. E. (2d) 316; *Owens*

*v. Smith,* 216 S. C. 382, 58 S. E. (2d) 332. And corollary to that rule, and especially pertinent here, is the obvious necessity of construing an amendatory provision with particular regard to the provision that it purports to amend.

Article III, Section 34, of the Constitution of 1895, as originally adopted, read as follows:

"The General Assembly of this State shall not enact local or special laws concerning any of the following subjects or for any of the following purposes, to wit:

"I. To change the names of persons or places.

"II. To lay out, open, alter or work roads or highways.

"III. To incorporate cities, towns or villages, or change, amend or extend the charter thereof.

"IV. To incorporate educational, religious, charitable, social, manufacturing or banking institutions not under the control of the State, or amend or extend the charters thereof.

"V. To incorporate school districts.

"VI. To authorize the adoption or legitimation of children.

"VII. To provide for the protection of game.

"VIII. To summon and empanel grand or petit jurors.

"IX. To provide for the age at which citizens shall be subject to road or other public duty.

"X. To fix the amount or manner of compensation to be paid to any County officer, except that the laws may be so made as to grade the compensation in proportion to the population and necessary service required.

"XI. In all other cases, where a general law can be made applicable, no special law shall be enacted.

"XII. The General Assembly shall forthwith enact general laws concerning said subjects for said purposes, which shall be uniform in their operations: Provided, That nothing contained in this Section shall prohibit the General Assembly from enacting special provisions in general laws."

It is thus seen that the first ten subdivisions of Article III, Section 34, as originally adopted, absolutely prohibited

local or special legislation on certain enumerated subjects; and that Subdivision XI prohibited such legislation "where a general law can be made applicable." As pointed out in *McElveen v. Stokes,* 240 S. C. 1, 124 S. E. (2d) 592, where many of our earlier decisions relating to Article III, Section 34 were reviewed, there had, prior to the adoption of the Constitution of 1895, developed in our General Assembly, as in the legislative bodies of the other states, a disposition toward general and indiscriminate enactment of local and special laws, a legislative habit that was deemed pernicious; and it was to prohibit such legislation except where a general law could not be made applicable that Subdivision XI was incorporated in Article III, Section 34.

As pointed out in the circuit decree under review, construction and maintenance of roads were problems of the counties when the Constitution of 1895 was adopted; the State Highway System was not established until 1924. With certain exceptions, all males between the ages of eighteen and fifty were subject to road duty for a specified number of days in each year, in lieu of which payment of a "commutation tax" was permitted. In 1904, Governor Heyward, in his message to the legislature (House Journal of January 12, 1904, p. 30) commented on the poor state of roads throughout the state, noted that while good work was being carried on in some counties the situation was otherwise in others, and recommended that legislation be enacted giving to counties the right to issue bonds for road purposes. That the absolute prohibition contained in original Subdivision II of Section 34 of Article III was considered by the General Assembly as a bar to such legislation is apparent from the fact that, following the Governor's message, a Joint Resolution was offered in the House proposing a constitutional amendment to permit special legislation concerning roads, and also concerning the age at which citizens should be subject to road duty, and to repeal Subdivisions II and IX of Article III, Section 34, the two questions (of amendment and of repeal) to be submitted separately. The Resolution

was amended in the Senate by the addition of the words "and concerning drainage" (also a matter of local, as distinguished from statewide, concern). As so amended, the Resolution was adopted on February 18, 1904 (24 Stat. at L. 676); and the two proposals submitted to the people having received a favorable vote, the amendment now Article II of the Amendments was ratified on February 18, 1905 (24 Stat. at L. 830), and the amendment repealing original Subdivisions II and IX of Article III, Section 34, was ratified on March 9, 1905 (24 Stat. at L., 959). There followed much legislation providing for the working and improvement by the several counties of their roads, and for the issuance by certain counties of bonds for the construction and improvement of such roads. (Statutes at Large, Vols. 25 and 26). It is to be noted, also, that the period of nearly forty years that elapsed between the establishment of the State Highway System and the passage of the act here in controversy is devoid of legislation attempting to place in the hands of the several counties the power to dictate to the State Highway Department what roads of the State Highway System within the respective counties it must hard-surface.

In *Salley v. McCoy,* 182 S. C. 249, 189 S. E. 196, the circuit decree, reported with the decision of this court affirming it, clearly states the intention and scope of what is now Subsection IX of Article III, Section 34, as follows:

"The clear intention of the framers of the Constitution of 1895 was by section 34 of article 3, to prohibit the enactment of special laws in all cases where a general law can be made applicable. In addition, it was desired to expressly prohibit special laws on certain named subjects. This intention was effectuated by naming the expressly prohibited subjects, and then providing that in all other cases no special law should be passed if a general law could be made applicable. The words 'in all other cases' were not intended to limit the scope of subsection 9, but rather to extend the scope

of section 34 so as to include any subject on which a general law can be made applicable."

The 1905 Amendment did not repeal Subdivision XI (now Subdivision IX) of Article III, Section 34. It repealed the prohibition contained in what were then Subdivisions II and IX against special legislation concerning the laying out, opening, altering or working of roads or highways, or fixing the age at which citizens should be subject to road or other public duty; and it placed in the Constitution, as Article II of the Amendments, express permission for the enactment of special legislation on those subjects. But except as to such legislation Subdivision XI (now Subdivision IX) remained in full force, and it cannot be ignored in our consideration of the Amendment and its suggested support of the 1962 Act.

In the light of the principles hereinbefore discussed, and against the background of the times and the legislative history of the Amendment to which we have adverted, we think that the Amendment may not be soundly construed to authorize the special act in question. To "lay out, open, alter or work" a road is one thing; to control the State Highway Department in the selection of roads for hard-surfacing in its system, is quite another. To give to the Amendment the construction for which appellants contend would be to extend its scope beyond its intended purpose and beyond the meaning manifest in its express language. Since special legislation on the subject matter of the challenged act is not within the protection of the Amendment, it is prohibited by Article III, Section 34, Subdivision IX.

Affirmed.

TAYLOR, C. J., and MOSS, LEWIS and BRAILSFORD, JJ., concur.