18795

Raymond K. McKENZIE, Appellant, v. David McLEOD, et al.,
(161 S. E. (2d) 659)

*Mitchell D. Palles, Esq.*, of Florence, *for Appellant,*

*Messrs. W. H. Caldwell* and *Philip H. Arrowsmith*, of Florence and *Sinkler, Gibbs & Simons*, of Charleston *for Respondents,*

May 28, 1968.

*Per Curiam.*

The sole question presented by this appeal is whether certain constitutional amendments, which were ratified by the General Assembly in 1967, authorize the issuance of bonds by the County of Florence for the purpose of erecting a multi-purpose building for the uses set forth in Act No. 818 of 1966, as amended by Act No. 98 of 1967. We are satisfied that the decree of the circuit court, which will be

reported herewith, correctly answers this question and that the exceptions are without merit.

Affirmed.

The order of Judge Baker follows:

This action is one under the "Uniform Declaratory Judgments Act," Section 10-2001 *et sequitur,* of the Code of Laws of South Carolina, 1962. It was instituted by Raymond K. McKenzie, a resident of the City of Florence and taxpayer of both the City and County of Florence. The purpose of the action is to restrain the defendant Florence County from constructing a certain structure in the City of Florence a portion of which would be leased by Florence County to the City of Florence, for Courtrooms, jail, Court related offices, and essential administrative offices of the County and City of Forence.

At its 1966 session, the General Assembly enacted legislation establishing the Building Commission of the City and County of Florence and gave it the function to acquire a suitable site utilizing the site of the existing county court house property and construct thereon a multi-storied highrise facility of sufficient size to provide certain public facilities required by Florence County and by the City of Florence. The Building Commission was empowered to operate and maintain the facility after it had been constructed and, in general, was given particular powers to enable it to carry out its responsibilities. This legislation further empowered the County to lease a portion of the building to be constructed to the City of Florence at a rental sufficient to cover the City's proper share of debt service on the bonds to be issued by Florence County to defray the cost of constructing the facility. Finally, the legislation authorized the County Board of Commissioners of Florence County to issue not exceeding $5,000,000.00 of general obligation bonds of Florence County in order to obtain funds for the construction of the multi-purpose building referred to therein.

The findings of the General Assembly set forth at the beginning of the 1966 legislation above referred to and known

as Act No. 818 of the Acts of 1966 make it clear that the purpose of the single multi-purpose high-rise building was to meet the needs of the City and County of Florence for office facilities in the most economical fashion possible. The General Assembly concluded that the needs of the City and County could be adequately served by the proposed building, which would take the place of separate facilities. Obviously the General Assembly concluded that the cost of constructing a single multi-purpose high-rise building would be less than the cost of constructing two or more buildings to carry out the same functions; and that the cost of operating a single building would be less than the cost of operating two or more buildings.

The implementation of the General Assembly's plan as set forth in Act No. 818 of 1966 was recognized to depend upon certain amendments to the South Carolina Constitution which were also proposed at the 1966 session of the General Assembly. Article 10, Section 6, of the Constitution enumerates the purposes for which a county may issue bonds and does not include the construction of a building to be utilized by the City of Florence or other governmental agencies not related to Florence County. Consequently, one of the proposed amendments enlarged the right of Florence County under Article 10, Section 6, to permit the issuance of Florence County bonds to defray the cost of constructing the proposed building. Article 10, Section 5, imposes an eight per cent debt limit on counties generally, which would prohibit the issuance of the proposed Florence County bonds authorized by Act No. 818. To overcome this obstacle, another proposed amendment provided that the debt limit should not apply in the case of the proposed bonds. Article 2, Section 13, requires a petition of freeholders and the favorable result of an election as a condition precedent to the incurring of bonded indebtedness by any city, including, of course, the City of Florence. The arrangement contemplated a longterm lease with the City of Florence, which was in effect bonded debt, and another proposed amendment

would exempt the lease obligation to be incurred by the City of Florence from the requirements of Article 2, Section 13, requiring such a petition and election. Finally, the City of Florence is subject to an eight per cent debt limit imposed by Article 8, Section 7, and Article 10, Section 5, and another proposed amendment would exempt the lease obligation to be incurred by the City of Florence from such debt limitations.

In all instances the amendments proposed referred to a multi-purpose building or multi-storied office building to be constructed by Florence County in order to provide court house, jail, city hall, office and related facilities for Florence County and the City of Florence and for other governmental agencies.

The amendments so proposed in 1966 were voted on favorably at the general election held November, 1966, and were subsequently ratified by the General Assembly at its 1967 session. However, the plans of the City and County with regard to the construction of the multi-purpose high-rise office building had undergone considerable changes. These changes are reflected to some extent in Act bearing ratification number R-144, enacted at the 1967 session of the General Assembly. The 1967 legislation limits the use of the proposed building to court rooms, jail, court-related offices, and essential administrative offices of the County and City of Florence. The 1967 legislation also authorized the County Council of Florence County, rather than the County Board of Commissioners, to issue the bonds to defray the cost of construction. The authorization to issue not exceeding $5,-000,000.00 of bonds was not amended, although the 1967 legislation restricted the powers of the Building Commission to the construction of a facility to cost not in excess of $3,700,000.00.

The changes reflected in the 1967 legislation are more fully set forth in the Complaint and are admitted by the defendants. It is clear that the proposed building now under consideration will be smaller than the building originally

contemplated; and while it will house facilities of both the City and of the County, the number of such facilities included is considerably smaller than originally planned.

Plaintiff alleges that the proposed structure is such a departure from that contemplated by such constitutional amendments that its construction is unauthorized by such constitutional amendments and therefore cannot be undertaken pursuant to such constitutional amendments. The defendants deny that there has been such a departure from the plan envisaged at the time of the enactment of the constitutional amendments as to render their proposed actions null and void, for the basic intent of the General Assembly remains to be subserved, *viz.,* elimination of duplication by the City and County of Florence. The question for decision here, therefore, is basically a question of legislative intent.

Constitutional amendments originate in the form of Resolutions in the General Assembly, which proposes specific changes in the Constitution. They are sponsored by the General Assembly and become effective through legislative process. Hence, when construing a constitutional amendment, the Court applies rules similar to those relating to the construction of statutes, in its effort to determine the intent of its framers and of the people who adopted it. *Miller v. Farr,* 243 S. C. 342, 133 S. E. (2d) 838. Thus, we must ascertain if it was intended by the aforesaid amendments that the defendant Florence County be limited to constructing such a building which exactly complies with all of the qualifications and characteristics set out in the amendments, or if it was intended by the amendments that the City and County of Florence be allowed to co-operate in the construction of a multi-purpose building to the extent now found expedient to eliminate duplication of effort. No categorical answer is to be found in the express language of the amendments, and we may, therefore, in seeking to ascertain their meaning, look to their historical background. Consideration of the object sought to be accomplished by these amendments is also an appropriate

inquiry in the judicial effort to determine the intent of the framers and of the people who adopted them. *Reese v. Talbert,* 237 S. C. 356, 117 S. E. (2d) 375. I must also take note of the fact that constitutional amendments are intended, not to obstruct the progress of the State, but rather to meet and be applied to new conditions and circumstances as they may arise. *Miller v. Farr, supra.*

A study of the findings of the General Assembly as contained in Act No. 818 of the 1966 session of the General Assembly indicates that prior to its passage, surveys had been made of the various existing facilities of the City and County, and it was found that such facilities were inadequate and new facilities were required. Subsequent to these surveys, a study was made as to the feasibility of constructing a single multi-purpose high-rise building to fulfill the needs of both the City and County of Florence. The finding of this study was that such a building would result in economies, both in construction and in its operation.

A plan was then evolved under which, among other things, a special commission would be established and given the power to construct and operate "the planned facilities"; Florence County would utilize a portion of the building for courthouse, jail, and related purposes; the City of Florence would utilize a portion of the building for city hall, municipal, jail, office, and related purposes, and a portion of the building would be made available to the State of South Carolina and perhaps to the United States Government if needed. As stated above, plaintiff's objection is that the structure as now contemplated does not follow this precise plan, and a harsh and strict interpretation of the constitutional amendments which were proposed *in pari materia* with this Act might justify plaintiff's contention. We have held, however, that constitutional amendments relative to bonded debt should be liberally construed. *Knight v. Allen,* 234 S. C. 559, 109 S. E. (2d) 585. While there is now contemplated a departure from the plan outlined in the aforesaid Act, it is clear to me that the departure is not so much

that no longer is there contemplated a single multipurpose high-rise building, but, rather, the functions to which the proposed structure is to be put differ from those set forth in the plan outlined in the 1966 Act. It was obvious then that construction could not be commenced until the adoption of the aforementioned constitutional amendments approximately a year thence, and during the interim, as is frequently the case, changes in the initial plan could reasonably be necessitated and expected.

It would be unusual indeed to amend the Constitution in such a fashion as to prescribe in detail the size and nature of a proposed building, when obviously construction plans can be modified. The General Assembly may in the enactment of statutory law be specific in such details, but, as was pointed out in the case of *Gebhardt v. McGinty*, 243 S. C. 495, 134 S. E. (2d) 749, it is relatively easy to amend a statute. It is much more difficult to amend the Constitution.

In the case of *Ramsey v. Cameron*, 245 S. C. 189, 139 S. E. (2d) 765, the South Carolina Supreme Court had the question of interpreting the meaning of a freeholders' petition submitted pursuant to the requirements of Article 2, Section 13, and the Municipal Bond Act in connection with the issuance of general obligation bonds of the City of Myrtle Beach. The petition sought an election on the issuance of $500,000.00 general obligation bonds, whose proceeds would be issued to construct a municipal civic center. The applicable debt limit, however, would not permit the issuance of the full amount of the bonds sought, and the action was to enjoin the issuance of bonds in a lesser amount. The plaintiff argued that the size of the building to be constructed from the smaller bond issue must of necessity be different from the building contemplated by the persons signing the petition. However, the Court noted that the effect of the petition was to restrict the use of the bond proceeds for a municipal civic center. The opinion states that "the size, capacity and design of such center are left to the discretion of the municipal council * * *. The appellant may

disagree with the conclusion reached by the council but there is nothing in the Constitution or in the statutes to prohibit their proposed action." The situation in the instant case is analogous, in that the constitutional amendments in question are applicable only in the case of a specific type of building defined in general terms. Indeed, the amendments do not attempt to specify the size of the building contemplated, and it would seem that the reasoning applied in the *Ramsey case* applies here.

Looking to the language of the amendments for a moment, it is seen that in order for the amendments to apply, the following conditions must be met: (a) There must be constructing, improving and enlarging (b) of a multi-purpose building (c) to provide courtrooms, jail, court related offices, and essential administrative office of the County and City of Florence (d) for Florence County and the City of Florence. It is obvious that it is impossible to construct, improve and enlarge any one building. One either constructs or improves or enlarges a building. It follows, therefore, that the word "and" in the amendments between the words "improving" and "enlarging" should be construed to mean "or." This conclusion is supported by the decision in the case of *Cain v. South Carolina Public Service Authority*, 222 S. C. 200, 72 S. E. (2d) 177, 185, in which the Court stated as follows:

"* * * In other words, we think the word 'and' which we have heretofore italicized in quoting the repurchase proviso should be construed to mean 'or'. Such is necessary to effectuate the legislative intent. Words are subservient to the intent and not the intent to the words. *Ashley v. Ware Shoals Mfg. Co.*, 210 S. C. 273, 42 S. E. (2d) 390 * * *."

It is further seen that the amendments set out that the purpose of the building is to provide courthouse, jail, city hall, office *and* related facilities. Here again, the word "and" should be construed to mean "or," for in the same context the same word should have a similar meaning throughout a constitutional amendment. *Scroggie v. Scarborough*, 162 S. C. 218, 160 S. E. 596; *Gebhardt v.*

*McGinty, supra.* Also in support of the construction of the word "and" to mean "or" in this context, I point out that the word "and" before the language "for other governmental agencies" necessarily means "or," as it is plain that the Legislature did not intend, for example, that the building provide a "city hall" for other governmental agencies. Giving the language of the constitutional amendments this construction, it is clear that the General Assembly had in mind a multi-purpose building which would fall short of housing all of the facilities set forth in the amendments.

I find that the intent of the General Assembly was to grant to the County some leeway in the nature of the multi-purpose building which it was to construct to meet the recommendations of the surveys and studies made by the City and County relating to their facilities and to make such economies as are possible in upgrading the facilities of the City and County. As set forth in the Answers of the defendants, only such a structure as is now proposed is now necessary to make these economies. Nevertheless, the construction of the proposed building remains necessary to house the aforementioned facilities of both the City and County and thereby make the economies sought by the passage of the aforesaid Act and the adoption of the aforesaid constitutional amendments.

I conclude, therefore, that the defendants are authorized by such constitutional amendments to proceed with their proposed undertaking, which undertaking subserves the legislative intent in adopting such constitutional amendments. I further hold that Florence County can proceed to issue not exceeding $5,000,000.00 of general obligation bonds to finance the cost thereof under the authorization granted to it by the aforesaid Act No. 818 of the 1966 session of the General Assembly, as amended by Acts of the 1967 General Assembly. I further hold that Florence County is authorized to enter into the lease with the City of Florence authorized by the aforesaid Acts and constitutional amendments.

And it is so ordered.